## JANE ANN DUNN v. THE PORTSMOUTH SAVINGS BANK, Appellant.

103  538
121  100

**Trusts:** EVIDENCE. A finding by the court that decedent did not hold real property in trust for a woman with whom he was living as his wife will not be disturbed on appeal, where the latter, as

his administratrix, treated the property as belonging to his estate, and the claim of trust was not made until a claim was made by the decedent's legal wife, and the circumstances strongly indicate that the claim of a trust was an afterthought to defeat the legal widow's claim.

**Estoppel:** CLAIM OF DOWER. The legal widow of deceased is not estopped to claim her dower as against one claiming under a woman with whom deceased at the time of his death was living as his wife, by the mere fact that after learning of his pretended marriage with the latter, she took no steps to enforce her rights during his life.

*Appeal from Pottawattamie District Court.*—HON. N. W. MACY, Judge.

WEDNESDAY, OCTOBER 27, 1897.

IN 1841 the plaintiff was married to Stephen Dunn, who died in December, 1887, seized of the legal title to certain lots in Council Bluffs, Iowa, and she brings this suit, averring that, as widow, she owns the undivided one-third of said lots, and asks that her title therein be quieted against the defendant bank, which she avers claims some interest therein. It is made to appear that there were born to plaintiff and Stephen Dunn several children, of whom John, Stephen and Almira survive; that plaintiff and Stephen Dunn were married in Montreal, Canada, and afterwards lived in Cincinnati, Ohio, where, somewhere between 1850 and 1856, Stephen Dunn took his children, and abandoned plaintiff; that he reached Council Bluffs some time after, and was married to a Mrs. Carson (known in the record as Mary Carson Dunn) in June, 1857, with whom he lived as his wife to his death in 1887. It appears that after his death Mary Carson Dunn was administratrix, and the estate was settled, and the real estate, by agreement, was divided between her and the heirs at law, being the children and a grandchild of Stephen Dunn. In such division the lots in question were deeded to Mary

Carson Dunn. She conveyed her title to one Paul E. Seabrook, who executed a mortgage thereon, which became the property of the defendant bank, and, by a foreclosure and sale, the bank now claims to be the owner of the lots. The issues present the question, *first*, is plaintiff the widow of Stephen Dunn? If she is, then, *second*, did Stephen Dunn hold the title to the lots in question in trust for Mary Carson Dunn? The district court gave a decree for plaintiff, from which the defendant appealed.—*Affirmed.*

*John W. Lytle* and *J. J. Stewart* for appellant.

*C. G. Saunders* for appellee.

GRANGER, J.—I. We do not think that appellant seriously contends that plaintiff is not the widow of Stephen Dunn, deceased, and entitled to a distributive share in his real estate. The only escape from such a conclusion is that they had been divorced, and no such claim is made in argument. In fact, the contrary quite clearly appears. It affirmatively appears that plaintiff never obtained a divorce, and has no knowledge of her husband doing so. Besides, it appears that Dunn, when he married Mary Carson, made no pretense of a divorce, but represented that he understood his wife to be dead, that she had died since he left her.

II. The claim that Dunn held the title to the lots in trust for Mary Carson Dunn is made to depend on the facts that when she married Dunn she was keeping a boarding house at Council Bluffs, and had for some time been doing so, and was the owner of considerable property, and that when she quit that business she went onto a farm, and conducted it and other business successfully, and that the real estate in question, and other real estate, was bought with her money, and that, while the title was taken in the name

of Dunn, it was in trust for her. She represents in her testimony that Dunn was a cutter and tailor by trade, and not a farmer, but worthless for such a business; that he was drunk considerable of the time, and spent more than he earned for drink. Her testimony shows him to have been a worthless man, and especially so for any business purpose. Other evidence shows him to have been a man of at least fair business capacity and habits. After his death, Mary Carson Dunn returned an inventory into court, showing him to have been the owner of six lots, including those in question, and one hundred and sixty acres of land, all valued at two thousand, six hundred and thirty-one dollars, and a personal estate, other than money in bank, of one thousand, two hundred and thirty-five dollars. It also appears that he had a credit balance in bank of five hundred and eleven dollars and seventy-four cents. The estate, thus inventoried, was settled as his in all respects by Mary Carson Dunn, she taking what the law gave her as widow, and his heirs taking the balance. The record shows a bank account with Stephen Dunn from April, 1885, to his death, with an almost constant credit balance in his favor. She claims that she was the owner of, practically, all this property, and that his right was simply that of a trustee for her. One cannot well escape the conclusion that the fact of Dunn being a trustee for Mary Carson Dunn was first thought of to escape the claims of plaintiff. In no other connection is there a word or deed in harmony with such a purpose. There is also strong reason to think that the idea of the utter worthlessness of Dunn originated when such an escape became desirable. While he lived, he was trusted by her as a man possessing business merit, and who was trustworthy. It is further insisted that the plaintiff is estopped by her acts to claim an interest in the property. This claim is based on the facts that she, for many years, knew that her husband was

married to Mary Carson Dunn; that she knew that Mary was caring for her children; that Stephen was without means; and that Mary supposed him to be a single man. It is also said that plaintiff caused it to be advertised in a paper that she was dead. Most of the claimed facts have no support in the evidence. It is true that plaintiff, after the marriage of Stephen and Mary, came to look for Stephen, and found him at St. Joe, and was told of the marriage, and that she left him after some conversation, saying that she hoped he would do well. There was little else for her to do. She had been abandoned years before, causelessly, so far as the record shows, and for years knew nothing of her husband or children; the latter having grown to man and womanhood. The claim of her having caused her death to be published is without support; in fact, the claim of estoppel has no substantial support in the record. The decree is clearly right, and it is AFFIRMED.