SHAW v. SAXMAN.

---

# SHAW v. SAXMAN.

---

HUSBAND AND WIFE; DOWER; ESTOPPEL; CONTRACTS.

1. An agreement of separation between husband and wife, made and per-
   formable in another jurisdiction, and set up as a defense to a suit
   in this jurisdiction by the wife to establish her right as widow in his
   estate, is governed by the law of the jurisdiction where made.

2. A separation agreement between husband and wife will be enforced
   against the wife by the laws of New Jersey only when, after a cau-
   tious examination of all the circumstances under which it was made,
   it appears to be fair to the wife and supported by some equity in
   favor of the husband or those claiming under him.

3. In a suit by a widow seeking to establish her interest as such in her
   deceased husband's estate, where the evidence showed that the hus-
   band about fifty years before his death, having deserted his wife
   for another woman after his enlistment in the army, entered into
   a separation agreement with her by which, in consideration of her
   promise not to disturb him, he promised to pay her $35 a month

while he was in the army, and help educate their three children; that he soon discontinued payments and thereafter contributed nothing to the support of his family and education of his children: that after leaving the army he came to this District, where, after living with another woman until her death, he successively went through ceremonial marriages with two other women; and that in dying he left a will making no provision for his wife from whom he was never divorced,—it was *held* that even if the separation agreement was to be interpreted as being a release by her of her right of dower in his estate, it was so unfair to her that it would not be enforceable; but that it was not so construed, but was merely intended to affect their relations during his life; and that she was not estopped by her failure to follow him to this jurisdiction and demand support, from claiming the right to participate, in his estate after his death. (Citing *Bowen* v. *Howenstein*, 39 App. D. C. 587, Ann. Cas. 1913E, 1179, and *Cronan* v. *Cronan, ante*, 343.) Mr. Justice McCoy, of the Supreme Court of the District, concurring.

No. 3063. Submitted May 7, 1917. Decided June 4, 1917.

HEARING on an appeal by the plaintiff from a decree of the Supreme Court of the District of Columbia dismissing a bill in equity to establish the right of the plaintiff to participate in the estate of her deceased husband.                          *Reversed.*

The COURT in the opinion stated the facts as follows:

Appellant, Catharine Woodrow Shaw, as the widow of Josiah Shaw, late of the District of Columbia, appeals from a decree of the supreme court of the District on the probate side, denying her claim to a widow's interest in her husband's estate. [The appellees are Chas. W. Saxman, Administrator, Henry P. Blair and Levi H. David, Administrators, C. T. A., Frances M. Shaw Frazier, and the Vestry of St. Marks P. E. Church.]

The appellant and the decedent Shaw were married in Blackwood, New Jersey, on March 10, 1856, and three children were born of the union, two of whom now are living. Shaw entered the Union Army in August, 1861, but continued to visit his wife until 1863, when he was stationed on recruiting duty at Trenton, New Jersey. In January, 1864, his wife went to

Trenton for the purpose of seeing him, but, having become interested in another woman, he declined to see her. Finally, an agreement of separation was entered into between them, each party agreeing not to disturb the other. Shaw was to pay appellant $35 per month while in the army and was to help educate the children, but he soon discontinued payments and thereafter contributed nothing either toward the support of his family or the education of his children. After the war he came to this city with the woman whom he had met at Trenton, and they lived together until her death in 1890. In 1892 he went through a ceremonial marriage with another woman, with whom he lived until her death in 1909. In October of 1910 he went through another ceremonial marriage. During most of this time he was employed as a clerk in the Pension Office. He died in 1914, leaving a will in which he made no provision for appellant.

Appellant never changed her residence, and supported herself and children. Through acquaintances in Washington she learned that her husband was living here, but made no demand on him for contribution toward her support. She never applied for a divorce and "never received any notification of any kind that any divorce proceedings had been instituted by Mr. Shaw."

Appellant introduced in evidence a letter written by Shaw to her under date of March 29, 1884. In that letter he stated that he had received several communications from members of her family, and that he had been informed that she had addressed a letter to the office making inquiry about him. He further stated that when he enlisted he deeded her all the property he owned, and that a final separation occurred in 1864, "through our respective counsel by agreement signed by you and myself." He then stated in effect that if appellant or members of her family troubled him further, he would resign, return to New Jersey, and test the title of the property she held.

Appellees introduced in evidence a decision of the Interior Department on appellant's application for pension as the widow of Shaw, in which it appeared that the records of the State of New Jersey and of the District of Columbia had been searched and no record of divorce found.

*Mr. Victor H. Wallace,* for the appellant, in his brief cited:

*Alhaugh* v. *Wilson,* 52 N. J. Eq. 424; *Aspinwall* v. *Aspinwall,* 49 N. J. Eq. 302; *Atlantic City R. Co.* v. *Goodin,* 62 N. J. L. 394; *Audubon* v. *Shufeldt,* 181 U. S. 577; *Bennett* v. *Finnegan,* 72 N. J. Eq. 155; *Brant* v. *Virginia Coal & I. Co.* 93 U. S. 326; *Brodess* v. *Thompson,* 2 Harr. & G. 120; *Butllar* v. *Buttlar,* 67 N. J. Eq. 645; *Butllar* v. *Buttlar,* 71 N. J. Eq. 671–674; *Cartwright* v. *McGowan,* 121 Ill. 388; *Cazier* v. *Hinchey,* 143 Mo. 203; *Cole* v. *Cole,* 153 Ill. 585; *Collins* v. *Voorhees,* 47 N. J. Eq. 555; *Coomes* v. *Clements,* 4 Harr. & J. 480; *Cram* v. *Cram,* 116 N. C. 288; *Dunbar* v. *Dunbar,* 190 U. S. 340; *Dunn* v. *Portsmouth Sav. Bank,* 103 Iowa, 538; *Ellis* v. *Ellis,* 58 Iowa, 720; *Emery* v. *Emery,* 45 Wash. L. Rep. 11; *Emery* v. *Neighbor,* 7 N. J. L. 142; *Foote* v. *Nickerson,* 70 N. H. 496; *Gaines* v. *Reutch,* 64 Md. 517; *Garwood* v. *Garwood,* 56 N. J. Eq. 265; *Gilman* v. *Sheets,* 78 Iowa, 499; *Goodwin* v. *Goodwin,* 113 Iowa, 319; *Gonzales* v. *Hukil,* 49 Ala. 260; *Griffith* v. *Griffith,* 4 Harr. & McH. 101; *Haddock* v. *Haddock,* 201 U. S. 562; *Halstead* v. *Halstead,* 74 N. J. Eq. 596; *Hokamp* v. *Hagaman,* 36 Md. 511; *Horn* v. *Foley,* 13 App. D. C. 184; *Hyde Park* v. *Canton,* 130 Mass. 505; *Re Colon,* 129 Iowa, 542; *Re Shaw,* 44 Wash. L. Rep. 265; *Re Sloan,* 50 Wash. 86; *Ireland* v. *Ireland,* 43 N. J. Eq. 311; *Jordan* v. *American Security & T. Co.* 33 App. D. C. 391; *Kerr* v. *Dougherty,* 79 N. Y. 327; *Land* v. *Shipp,* 98 Va. 284; *Lowell* v. *Daniels,* 68 Mass. 161; *Martin* v. *Martin,* 22 Ala. 86; *Meyerl* v. *Meyerl,* 125 Mich. 607; *Miller* v. *Miller,* 1 N. J. Eq. 387; *Moon* v. *Bruce,* 63 S. C. 126; *O'Connell* v. *Noonan,* 1 App. D. C. 335; *Pittinger* v. *Pittinger,* 89 Am. St. Rep. 206; *Rannells* v. *Gerner,* 80 Mo. 474; *Read* v. *Howe,* 13 Iowa, 50; *Reel* v. *Elder,* 62 Pa. 308; *Richardson* v. *Daggert,* 24 App. D. C. 440; *Roberts* v. *Trammel,* 15 Ind. App. 445; *Silverman* v. *Silverman,* 140 Mass. 560; *Shelton* v. *Shelton,* 20 S. C. 560; *State* v. *Eggleston,* 45 Or. 346; *Stephens* v. *Stephens,* 56 N. J. Eq. 488; *Taylor* v. *Riley,* 37 Kan. 90; *Towles* v. *Fisher,* 77 N. C. 437; *Townshend* v. *Brooke,* 9 Gill, 90; *Travers* v. *Rein-*

*hardt,* 25 App. D. C. 567, 205 U. S. 423; *Tyler* ·v. *Andrews,* 40 App. D. C. 100; *Unfried* v. *Heberer,* 63 Ind. 67; *Voorhees* v. *Voorhees,* 46 N. J. Eq. 411; *Wallingford* v. *Allen,* 10 Pet. 583; *Walsh* v. *Kelley,* 34 Pa. 84; *Watkins* v. *Watkins,* 7 Yerg. 283; *Weathersbee* v. *Farrar,* 97 N. C. 106; *Williams* v. *Williams,* 63 Wis. 58; *Wilson* v. *Allen,* 108 Ga. 275; *Wiseman* ·v. *Wiseman,* 89 Ind. 479; *Wood*·v. *Chetwood,* 44 N. J. Eq. 64; *Woodruff* v. *Clark,* 42 N. J. L. 198; 1 Blackstone, bk. 2, chap. 32; ·11 Am. & Eng. Enc. Law, 1277; D. C. Code, secs. 139–140–142, 375, 378, 1173, 1283, 1635; Comp. Stat. chap. 35, secs. 54, 55, 57; 14 Cyc. 83, 734; 16 Cyc. 741, 770; 17 Cyc. 826; 18 Cyc. 1141.

*Mr. Paul Sleman, Mr. H. P. Blair, Mr. Arthur Hellen, Mr. T. L..Jeffords,* and *Mr. L. H. David,* for the appellees, in their brief cited:

*Besant* v. *Wood,* L. R. 12 Ch. Div. 605; *Bowen* v. *Howenstein,* 39 App. D. C. 587; *Brinkerhoff* v. *Brinkerhoff,* 23 N. J. Eq. 477; *Brooks* v. *Laurent,* 98 Fed. 656; *Carpenter* v. *Carpenter,* 25 N. J. Eq. 194; *Cazier* v. *Hinchey,* 143 Mo. 203; *Consolidated Fruit Jar Co.* v. *Wright,* 94 U. S. 92; *Crauford* v. *Crauford,* 22 Md..465; *Dillenger's Appeal,* 35 Pa. 357; *Dugan* v. *Hollins,* 11 Md. 41; *Dunn* v. *Portsmouth Sav. Bank,* 103 Iowa, 538; *Daniels* v. *Benedict,* 38·C. C. A. 592; *Frazier* v. *Gelston,* 35 Md. 298; *Gamble* v. *Rucker,* 137 S. W. 499; *Gregg* v. *Von Phul,* 1 Wall. 274, 281; *Griffith* v. *Griffith* (note) 4 Harr. & McH. 101; *Halstead* v. *Halstead,* 74 N. J. Eq. 596; *Hitner's Appeal,* 54 Pa. 110; *Hokamp* v. *Hagaman,* 36 Md. 511; *Horn* v. *Cole,* 12 Am. Rep. 111; *Ireland* v. *Ireland,* 43 N. J. Eq. 311; *Kerr* v. *Dougherty,* 79 N. Y. 327; *Kremelberg* v. *Kremelberg,* 52 Md. 553; *Lowell* v. *Daniels,* 2 Gray, 161; *McCord* v. *McCord,* 114 Pac. 971; *Martin* v. *Martin,* 22 Ala. 86; *Mann* v. *McDonald,* 3 App. D. C. 456; *Moon* v. *Bruce,* 63 S. C. 126; Note, 12 L.R.A.(N.S.) 848–850; *Pole* v. *Simmons,* 45 Md. 249; *Read* v. *Howe,* 13 Iowa, 50; *Reel* v. *Elder,* 62 Pa. 308; *Schaeffer* v. *Richardson,* 125 Md. 88; *Scott's Estate,* 147 Pa.

102; *Shelton* v. *Shelton*, 20 S. C. 560; *Speidel's Appeal*, 107 Pa. 18; *Smith* v. *Fuller*, 138 Iowa, 91; *Wallingsford* v. *Allen*, 10 Pet. 583; *Walker* v. *Walker*, 9 Wall. 743; *Walsh* v. *Kelly*, 34 Pa. 84; *Watkins* v. *Watkins*, 15 Tenn. 283; *Wooden* v. *Colored Grand Lodge*, 50 So. 457; D. C. Code, Secs. 86, 119, 139, 1631; 1 Horwitz ed. Jones, Ev., ¶ 86; 2 Pom. Eq. Jur. 3d Ed. ¶ 814; Woerner & W. Decedents' Estates, 1913, pp. 119, 123.

Mr. Justice Robb delivered the opinion of the Court:

It is not questioned that appellant and Shaw were married as claimed, nor could it well be, for the evidence on this point is overwhelming, as was found by the learned trial justice. The court further found that the parties never were divorced, and in that finding we concur. See *Smith* v. *Fuller*, 138 Iowa, 91, 16 L.R.A.(N.S.) 98, 115 N. W. 912. It necessarily follows, therefore, that appellant is the widow of Shaw. The learned trial justice disposed of the case upon the theory that the clause in the agreement of separation to the effect that the parties were not to disturb each other referred to "property matters," and that inasmuch as appellant for fifty years had given no indication that she intended to disturb Shaw in his property rights "or to treat herself as having any right in his estate," she now is estopped to assert such a right.

Agreements of separation not made in contemplation of a future possible separation will be recognized and enforced if the provision for the wife's support is reasonable and fair. *Cronan* v. *Cronan*, *ante*, 343, present term and cases there cited. Inasmuch, however, as such an agreement does not dissolve the marriage relation, it does not bar the wife from her share in the husband's estate, unless it expressly purports to do so. *Ireland* v. *Ireland*, 43 N. J. Eq. 311, 12 Atl. 184; *Moon* v. *Bruce*, 63 S. C. 126, 40 S. E. 1030; *Walsh* v. *Kelly*, 34 Pa. 84. Even a divorce *a mensa et thoro* does not deprive a widow of her dower or reasonable part of the estate of her husband. Such a decree operates merely to legalize the separation of the parties and makes provision for the wife so long as the separation shall con-

tinue. Upon the death of either that provision ceases. *Holcamp* v. *Hagaman,* 36 Md. 511, 517; 2 Bishop, Marr. & Div. ¶ 726.

This brings us to an examination of the agreement of separation here involved. This agreement was made in New Jersey and is governed by the law of that jurisdiction. There such an agreement will be countenanced and enforced "only in a case which, after a cautious examination of all the circumstances which surround and enter into the agreement, appears to be fair to the wife, and also to be supported by some equity in favor of the husband or those who claim under him." *Ireland* v. *Ireland,* 43 N. J. Eq. 311, 12 Atl. 184. Tested by this rule, no court would enforce the agreement in the present case, even though it should be given the interpretation placed upon it by the learned trial justice. Shaw, without cause, had deserted his wife and had assumed meretricious relations with another woman. He was under both a legal and a moral obligation to support his wife and children, and this obligation he recognized in the agreement. But he failed to fulfil his promise, and his wife was compelled to support herself and her children without his aid. The deed referred to in Shaw's letter to his wife formed no part of the consideration for this agreement, because it was executed while the parties were living together, in evident contemplation of the hazards which Shaw was to undergo through his enlistment, and was not even mentioned in the agreement. No court, therefore, would permit either Shaw or those who claim under him to take advantage of such agreement. To do so would be to reward duplicity and breach of duty.

But we find nothing in the terms of this agreement indicating that it was intended to cover anything more than the relation of the parties during life. Appellant agreed that if Shaw would contribute towards her support and the education of their children, she would not disturb him. She did not agree that she would not disturb his estate, and to read such a provision into the agreement as a waiver of her rights would be to reverse the presumptions. We are clearly of the view, therefore, that this agreement did not constitute a waiver of appellant's right to participate in her husband's estate.

The next question is whether appellant is estopped by her conduct from claiming the rights of a widow in the estate of her husband.   If the rule of estoppel *in pais* is to be invoked here, it must be upon the theory that in conscience and honesty this widow should not now be permitted to assert her claim.  *Bowen* v. *Howenstein,* 39 App. D. C. 587, Ann. Cas. 1913E, 1179. "An estoppel *in pais* is sometimes said to be a moral question. Certain it is that to the enforcement of an estoppel of this character, such as will prevent a party from asserting his legal rights to property, there must generally be some degree of turpitude in his conduct which has misled others to their injury." *Henshaw* v. *Bissell,* 18 Wall. 255, 271, 21 L. ed. 835, 840.   Thus, where a duty devolves upon one to speak and he remains silent to the injury of another, he will not be permitted afterwards to take advantage of a situation for which he was responsible. *Consolidated Fruit Jar Co.* v. *Wright,* 94 U. S. 92, 24 L. ed. 68.

Turning now to the facts in the present case, what do we find? A wife was deserted by her husband without cause and left with two small children to rear and educate.   It will not be questioned that the burden cast upon her was a grievous one. Apparently realizing the futility of further efforts to induce her husband to return to her and her children, she attempted to obtain some contribution for their support, but her efforts were rewarded with little more than a naked promise.   Instead of returning home, her husband, accompanied by a woman who must have known he was married, came to Washington and made this his home during the rest of his life.   What was appellant to do?   Her home was in New Jersey, and there she remained throughout all the years of her husband's infidelity.   She was among her friends, where it was easier for her to gain a livelihood for herself and children, and her conduct throughout always was consistent with the fact that she was the deserted wife of Shaw.   She always claimed to be his wife, and never made any representation inconsistent with that claim.   We know of no rule making it incumbent upon a deserted wife to follow a husband and his paramour into another jurisdiction, to which they have fled, and there proclaim her own humiliation and their miscon-

duct.  Nor was it appellant's duty to follow this man through his misguided career, that she might either bring him to justice or warn those whom he sought to deceive.  The woman whom he brought here from New Jersey lived until 1890, and there is no evidence that appellant knew of his subsequent misconduct in time to frustrate it.  In other words, there is no evidence that, by word or deed, she lead the two women with whom her husband went through a marriage ceremony to believe that he was free to marry.  Since it was not her duty to subject her husband to espionage, and she was in no way responsible for his deception of the two women he attempted to marry, there are no elements of estoppel present.  In *Dunn* v. *Portmouth Sav. Bank,* 103 Iowa, 538, 72 N. W. 687, a husband took his children, abandoned his wife, and soon thereafter went through a marriage ceremony with another woman, with whom he lived for thirty years.  The legal widow claimed dower, and it was sought to estop her for the reason that, after learning of her husband's pretended marriage, she had taken no steps to enforce her rights during his life.  It further appeared that after this attempted marriage his legal wife interviewed him and, upon being told what he had done, expressed the hope that "he would do well." The court remarked that "there was little else for her to do," and that "the claim of estoppel has no substantial support in the record."  Here the wife's conduct was consistent throughout, and there was no failure of duty on her part.  We hold, therefore, that she is not estopped to assert her claim.

It is assigned as error that the court did not award appellant one half of the personal estate of her deceased husband, the contention being that she is entitled to one half instead of one third. As the court ruled that she was estopped to claim anything, it is apparent that there has been no ruling on this question, and hence that the assignment is premature.  However, we may remark that, in our view, sec. 375 of the Code [31 Stat. at L. 1249, chap. 854], to the effect that if there be a widow and a child or children, the widow shall have one third only of the estate, clearly is applicable.  The other assignments of error are premature and will not be considered.

The decree is reversed, with costs, and the cause remanded for further proceedings.                    *Reversed and remanded.*

Mr. Justice McCoy, of the Supreme Court of the District of Columbia, who sat with the Court in the hearing and determination of the appeal in the place of Mr. Chief Justice SHEPARD, concurring:

I concur in the conclusion that the decree herein must be reversed.

The only evidence of the agreement of separation is that which is found in the testimony of the appellant, the agreement itself not having been produced, and what she says does not establish the making of a contract sufficiently broad in its terms to prevent her from now claiming the right to share in the personal estate of Josiah Shaw.

The decree cannot be upheld on the ground of estoppel because there is no one before the court who has changed his position in reliance upon anything that the appellant did or upon the failure of the appellant to do what she might have done.

These conclusions are not based at all upon any view as to the conduct of the decedent. The appellant would have us believe that she was not in fault at all, but it seems to me that there is more in the story of the lives of these two people than the appellant has allowed to come into this case.

In a letter of the decedent to her he states that he had kept his agreement and that she must stop annoying him, else he would take steps to protect himself. Here was a challenge to the appellant to assert her rights, which she did not accept. Why not?

I prefer therefore to place my concurrence on the two grounds already stated, for if an agreement on the part of the appellant to forego an interest in Shaw's estate were clearly proved, there would be nothing inequitable in permitting the agreement to have effect; or if anyone had been injured in reliance upon her conduct, it would not be equitable to permit her to interfere with rights acquired from Shaw in good faith and for value.

The court below not having passed upon the question of the proper proportion of the estate to be awarded to the appellant in the event that she is entitled to anything, I express no opinion thereon.