## SPRECKELS v. WAKEFIELD.

(Circuit Court of Appeals, Ninth Circuit.  February 19, 1923.)

No. 3832.

1. **Husband and wife ⬳278(2)—Provision for alimony in agreement conducive to relaxation or severance of marital ties is void.**

Any provision for alimony contained in a contract or agreement between husband and wife, which by its terms or effect is conducive to a relaxation or severance of the marital ties, is void as contrary to public policy and will not be upheld or maintained.

2. **Husband and wife ⬳278(2)—Agreement settling property rights when parties have separated and just grounds for divorce exist not void.**

Where a separation of husband and wife has been induced, not by collusion, but by vicious conduct or disability of one of the parties without the other's inducement or fault, and it has furnished just grounds for divorce, a contract looking to the settlement of property rights is not repugnant to public policy.

3. **Husband and wife ⬳278(2)—Agreement for monthly payments from entry of decree of divorce held against public policy.**

A contract between husband and wife, who were separated and contemplating a divorce and had each employed counsel, providing that from the making and entry of a decree of divorce the husband would pay the wife $350 a month during her life, *held* contrary to public policy as having a tendency to withhold from the court in the divorce suit evidence of the facts on which its judgment should be based and to facilitate a divorce which but for the inducements thereby offered might not have occurred.

4. **Divorce ⬳255—Agreement for monthly payments from entry of decree of divorce held superseded by the decree.**

An agreement between husband and wife, who were separated and contemplating a divorce, that from the entry of a decree of divorce the husband would pay the wife $350 a month for her life, *held* merged in and superseded by an interlocutory decree awarding the wife $10 a month as alimony and $100 a month for the support and maintenance of each of the children during their minority, especially where payments were not made in accordance with the contract but were probably made in obedience to the decree without protest.

5. **Divorce ⬳255—Decree held only to affirm agreement between parties when not altered by interlocutory decree.**

Where agreement between husband and wife, before institution of divorce suit, was that from entry of the decree the husband would pay the wife $350 a month, but interlocutory decree provided for payment of $10 a month as alimony and $100 a month during minority for the maintenance of each child, a provision of the final decree that it should not affect the existing agreement affirmed the agreement only in so far as it was not altered by the interlocutory decree.

6. **Divorce ⬳236—Agreement as to property rights scrutinized before being sustained.**

When contract between husband and wife for payment of alimony in case of divorce is sustained by the decree, it is first scrutinized to determine that it was not part of a collusive arrangement to facilitate the granting of a divorce or the result of imposition, and it is an essential requisite to its sustension by the decree that it be not concealed from the court.

7. **Divorce ⬳255—Decree adjudicates all property rights.**

A decree of divorce is deemed an adjudication between the divorced parties of all property rights or questions connected with the marriage relation.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the Second Division of the Northern District of California; William T. Sawtelle, Judge.

Action by Edith H. Wakefield against John D. Spreckels, as special administrator of John D. Spreckels, Jr., deceased. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with instructions.

The defendant in error recovered a judgment against the plaintiff in error for $11,413.52, upon a contract which was entered into between the parties on December 1, 1913. The parties will be named herein plaintiff and defendant as in the court below. At the time of the contract the plaintiff was the wife of the defendant. The agreement recited that the plaintiff was about to commence a suit for divorce, that each of the parties had engaged counsel, that they desired to avoid the expense of litigation over their respective property rights, including the plaintiff's right to temporary and permanent alimony and to avoid controversy over the care, custody, and maintenance of the minor children. In consideration of their mutual covenants, and other good and valuable considerations, the defendant as party of the first part and the plaintiff as party of the second part agreed as follows:

"(1) That upon the due making and entry of an interlocutory decree of divorce in favor of the said second party, the said first party will pay unto the said second party the sum of three hundred and fifty ($350.00) dollars, monthly, in advance, commencing with the date of the entry of said interlocutory decree, for the period of one year thereafter; that upon the due making and entry of a final decree of divorce in favor of the said second party, said first party will pay unto the said second party, monthly, in (2) advance, the sum of three hundred and fifty ($350.00) dollars during the remaining period of her natural life.

"(2) That the said second party agrees to accept said several sums of three hundred and fifty ($350.00) dollars, monthly in advance, as and for and in full of her right or claim to temporary and permanent alimony, maintenance, and support from the said first party.

"(3) That the said second party hereby releases, quitclaims and grants unto the said first party all her right, title and interest, past, present and future, in and to any and all community property of the said parties hereto and in and to any and all separate property of the said first party.

"(4) That the said parties hereto have settled and do hereby forever settle all their property rights, including the right of the said second party to alimony, support and maintenance from the said first party, and that whatever property the said first party now has, be the same community or separate property, and whatever property he may hereafter acquire shall henceforth be considered as and be his separate property, and that whatever proportion the said second party now has or may hereafter acquire shall henceforth be considered as and be her separate property. * * *

"(9) That the provisions of this agreement shall not be modified or abrogated by any interlocutory decree or final decree of divorce in favor of the said second party which may be hereafter made and entered.

The complaint alleged that thereafter the plaintiff filed her suit for divorce, and that on August 22, 1914, an interlocutory decree of divorce was made and entered in her favor, which was made final on August 25, 1915; that the agreement between the parties was not abrogated, modified, or changed by the decree in said divorce suit; that monthly payments were made in accordance with the agreement up to April 1, 1915; that since that date the defendant had paid but $200. The complaint alleged the remarriage of the plaintiff.

The defendant in his answer alleged that in the plaintiff's complaint for divorce, she had sued for the custody of the three minor children and for alimony and counsel fees and a reasonable sum for the maintenance, care, and education of the children; that in the interlocutory decree the custody of the children was awarded to the plaintiff, and it was ordered that the de-

fendant pay to her for her support during her life the sum of $10 per month, that he pay to her for the support and maintenance of each of said children the sum of $100 per month during minority; that the said interlocutory decree was never appealed from or modified or set aside; and that thereby the written agreement of December 1, 1913, became superseded and merged in the decree. The defendant further alleged that he had paid to the plaintiff all sums required to be paid by said interlocutory decree.

A jury trial was waived. The court found in substance that the purpose of the contract between the parties was not to bring about a dissolution of the marriage relation or to facilitate divorce, and that it did not influence, or tend to influence, the plaintiff in procuring her divorce, or tend to influence the defendant not to resist the divorce; that there was no collusion between the parties to procure a divorce; that the contract was induced only by the desire of the contracting parties to avoid the expense of litigation over all questions of property, and to avoid controversy as to the care, custody, and maintenance of the minor children; and that it was not the intention of the parties at the time of entering into the contract that the same should be merged in any decree of divorce thereafter to be rendered.

Samuel M. Shortridge, Morrison, Dunne & Brobeck, and Bert Schlesinger, all of San Francisco, Cal., for plaintiff in error.

James F. Peck and Charles W. Byrnes, both of San Francisco, Cal., for defendant in error.

Before GILBERT and HUNT, Circuit Judges, and WOLVER-TON, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). [1, 2] The principal question presented by the assignment of errors is whether or not the contract between the plaintiff and the defendant is void and against public policy in that it was made and executed to facilitate or promote dissolution of the marriage relation then existing between the parties. In 1 R. C. L. 924, it is said:

"It may be stated generally that any provision for alimony contained in a contract or agreement between husband and wife which by its terms or effect is conducive to a relaxation or a severance of the marital ties is void as contrary to public policy, and will not be upheld or maintained, but where a separation has been induced not by collusion but by the vicious conduct and disability of one of the parties without inducement or fault of the other and it has furnished just grounds for legal separation or divorce then a contract looking to a settlement of property rights is in no sense repugnant to public policy."

The doctrine so stated by the text-writter is believed to be amply sustained by the weight of authority. We turn to the inquiry whether the case at bar comes within the first or the second of the clauses so quoted.

[3] Was the contract under consideration one which by its terms or effect was conducive to a relaxation or a severance of the marital ties? The record shows that prior to the time of entering into the contract the parties thereto had separated, divorce was contemplated, and that each had employed counsel. The contract contained the provision that the defendant's payments of $350 per month were to begin "upon the due making and entry of an interlocutory decree of divorce," in favor of the plaintiff, and were to continue during her life. Thereby the defendant bound himself and also his estate to the continued payment of the specified alimony after his death in case the plaintiff should survive

him. A case in point is Moore v. Moore, 255 Fed. 497, 166 C. C. A. 573, where it was held that a contract by a husband separated from his wife and pending the wife's suit for divorce, by which he bound himself to pay her a stipulated sum per week during her life conditioned upon the granting of a divorce, is contrary to public policy and void. Said the court:

"It cannot be denied that the contract in this case contemplates separation in the future, that is, a separation that will follow future divorce. It looks to, not merely a possible, but an intended, separation. The husband's promise is enforceable, if at all, only after a divorce a vinculo matrimonii has been granted; therefore his promise is conditioned on that event. Has the promise a tendency to induce that event? The promise was not made to cover merely a real or fancied obligation. * * * The promise was for something more than for support of the divorced wife during the period of the husband's life —an obligation which the laws of some states would impose upon him. He undertook to support her for her life and to do this he bound 'his heirs, executors, and administrators' to continue payments for her support after his death. By this promise, the wife was shown, that if she succeeded in getting a divorce, she would receive more than the law would award her."

The agreement between the plaintiff and the defendant was intended to take from the court the jurisdiction to determine which of the parties to the suit was the better fitted to have the custody and control of the minor children, and what should be a fitting allowance for the support and education of the children. It contained a provision that its terms should not be "modified or abrogated by any interlocutory decree or final decree of divorce in favor of the said second party." Such a contract, we think, is contrary to public policy. Its tendency is to withhold from the court in the divorce suit evidence of the facts on which its judgment should be based and to facilitate a divorce which but for the inducements offered to the plaintiff might not have occurred. In Muckenburg v. Holler, 29 Ind. 139, 92 Am. Dec. 345, the contract provided that the stipulated payments of alimony to the plaintiff by the defendant should begin "one day after the divorce should be granted." The court held that a promise so framed, as to have effect only on condition that a divorce should be granted, had the direct tendency to interest the plaintiff in procuring a divorce. The court said:

"The marriage relation is not thus to be tampered with, and the courts, by contract of the parties, converted into mere registrars of their agreements for separation from the bonds of matrimony."

Among other cases in line with the foregoing are Birch v. Anthony, 109 Ga. 349, 34 S. E. 561, 77 Am. St. Rep. 379; Kistler v. Kistler, 141 Wis. 491, 124 N. W. 1028; Hamilton v. Hamilton, 89 Ill. 349; Schmieding v. Doellner, 10 Mo. App. 373.

[4, 5] Another consideration leading to the conclusion that the judgment should be reversed is that the record shows that the contract was merged in and superseded by the provision for alimony contained in the interlocutory decree of divorce. The record affords no explanation of the fact that the interlocutory decree did not embody the contract between the plaintiff and the defendant or make any reference thereto. It awarded the custody of the three children to the plaintiff, and ordered that the defendant pay to her during her lifetime the sum

of $10 per month, and that he pay to her for the maintenance of each of said children the sum of $100 per month during their minority, and that he pay the plaintiff $1,500 as attorney's fees. The record would seem to indicate that knowledge of the contract between the parties was withheld from the court, or, if it was revealed, that the court disapproved it and substituted its own judgment as to the proper and fitting sum to be paid the plaintiff for alimony and for the support of the children. This decree appears to have been accepted by the parties as a substitute for their contract. Payments were not made in accordance with the terms of the contract, and although there is a conflict in the evidence as to the amounts actually paid, the payments would appear to have been made in obedience to the court's decree, rather than in pursuance of the agreement between the parties. Nor is it shown that the plaintiff ever protested against the payments, or lack of payments as a departure from the contract, or that at any time prior to the commencement of this action she demanded compliance with the terms of the contract. The rights of the parties as to alimony in the divorce suit were determined by the interlocutory decree. Bancroft v. Bancroft, 178 Cal. 368, 173 Pac. 582. It is true that in the final decree it was adjudged that the adjudication should not affect an existing agreement between the parties made on December 1, 1913. The decree provided:

"And by consent of the parties hereto the court hereby reserves the right to hereafter determine all matters in regard to the existing rights of the parties hereto."

But there is nothing to show that at any time the court was advised of the nature, terms, or purpose of the contract.

[6, 7] Where a contract between husband and wife for the payment of alimony to the latter in case of divorce is sustained by the decree of divorce, it is first scrutinized for the purpose of determining that it is not a part of a collusive arrangement to facilitate the granting of a divorce, and that it is not the result of imposition on one of the parties (Nelson v. Vassenden, 115 Minn. 1, 131 N. W. 794, 35 L. R. A. [N. S.] 1167); and it is an essential requisite to the sustension of such a contract by the decree that it be not concealed from the court (Maisch v. Maisch, 87 Conn. 377, 87 Atl. 729); and where it is sustained, the contract is made a part of the decree (Pryor v. Pryor, 88 Ark. 302, 114 S. W. 700, 129 Am. St. Rep. 102; Storey v. Storey, 125 Ill. 608, 18 N. E. 329, 1 L. R. A. 320, 8 Am. St. Rep. 417; Galusha v. Galusha, 116 N. Y. 635, 22 N. E. 1114, 6 L. R. A. 487, 15 Am. St. Rep. 453; Loveren v. Loveren, 106 Cal. 513, 39 Pac. 801; France v. France, 79 App. Div. 291, 79 N. Y. Supp. 579); and the decree is deemed and held to be an adjudication between the divorced parties of all property rights or questions connected with the marriage relation (Walker v. Walker, 150 Ind. 317, 50 N. E. 68). But if indeed it is to be assumed that the terms of the "existing agreement" were made known to the court before or at the time of the entry of the final decree of divorce between the parties to the present case, the utmost that can be claimed for the court's recognition of its existence is that it involves the affirmation of the agreement save and except in those provisions wherein it

had been altered by the interlocutory decree, in providing for the monthly payments of alimony, and as to those provisions jurisdiction is still retained in that court to do that which is equitable and just between the parties.

The judgment is reversed, and the cause is remanded, with instruction to enter a judgment for the defendant.