### LANDA v. ASTIN.

No. 10343.

United States Court of Appeals
District of Columbia Circuit.

Argued March 27, 1951.

Decided Nov. 29, 1951.

Fahy, Circuit Judge, dissented in part.

Delmar W. Holloman, Washington, D. C., for appellant.

Meredith M. Daubin, Washington, D. C., with whom Temple Wayne Seay, Washington, D. C., was on the brief, for appellee.

Before EDGERTON, FAHY, and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

The parties to this action were married in 1930. In 1937 they separated, and four years later they decided to obtain a divorce. Pursuant to that decision, three agreements were executed, dated December 1, 1941. The first two need not detain us: they provided, among other things, for the wife's support pending the divorce, for monthly payments of $150 during the husband's lifetime until remarriage of the wife, and for a mutual settlement and release of property rights. The third agreement, entitled "Note Agreement," gave rise to the present suit. It recited that the husband was indebted to the wife in the sum of $30,000, that a divorce was contemplated, and that the husband desired to provide for the security of the wife, should the marriage be dissolved, by giving evidence of the indebtedness. Following these recitals, the husband undertook two obligations. The first was to deliver, within ten days after the anticipated divorce, his promissory note for $30,000, payable to her order in monthly installments of $200 commencing on the 15th day of the month following the divorce decree. The note was to be cancelled on the wife's death. In a separate paragraph of the "Note Agreement," the husband promised to pay an additional $5,000 in the event of the wife's remarriage. The "Note Agreement" was under seal.

The wife, appellee here, obtained a divorce on April 18, 1942. On May 20, 1950, she remarried, and she thereupon demanded payment of the $5,000 promised by the "Note Agreement." Upon her ex-husband's refusal to pay, she brought suit in the United States District Court for the District of Columbia. After filing her complaint, she moved for summary judgment, and each party filed an affidavit. On the

basis of the complaint and affidavits, summary judgment was granted. The husband has appealed on two points. He first contends, on the basis of his affidavit, that the recited debt of $30,000 was fictional and that there was in fact no consideration for the promise sued on. His second contention is that the court below erred in disposing of the case by summary judgment, because a material issue of fact was presented as to whether or not the contract violated public policy, as being a contract for the procurement of divorce.

█ With respect to the alleged lack of consideration, there was no dispute as to the facts. The only question[1] is whether the contract sued on was under seal, or whether a letter written one week after its execution, changing the due dates of installments on the $30,000 note,[2] superseded the sealed "Note Agreement" and converted it into a simple contract. We need not decide whether it had this effect on the promise to pay $30,000, for that sum is not here in controversy. Plainly the modification did not touch the $5,000 to be paid on appellee's remarriage. That promise remained a covenant under seal unmodified by parol, and it is consequently enforceable as such regardless of consideration.[3] With regard to this point, therefore, appellee was entitled to judgment as a matter of law.

In support of his second contention, that the contract in suit contravenes public policy, appellant cites such authorities as Spreckels v. Wakefield, 9 Cir., 1923, 286 F. 465; Cronan v. Cronan, 1917, 46 App.D.C. 343, 349; and Moore v. Moore, 3 Cir., 1919, 255 F. 497, 501. But, for the purposes of this case, it is not necessary for us to survey the boundaries of the doctrine on which appellant relies or to decide whether the authorities he cites state the present-day law of this jurisdiction. Cf. Hill v. Hill, 1943, 23 Cal.2d 82, 142 P.2d 417. For we consider that even under the doctrine advanced by appellant he has failed to lay an adequate foundation for an attack on the agreement.

█ The primary rule of public policy in respect of the enforcement of agreements is that "competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in the courts. * * * The principle that contracts in contravention of public policy are not enforceable should be applied with caution and only in cases plainly within the reasons on which that doctrine rests." Twin City Pipe Line Co. v. Harding Glass Co., 1931, 283 U.S. 353, 356–57, 51 S.Ct. 476, 477, 75 L.Ed. 1112. And as this court long ago said: "We would be exceedingly reluctant in any case to declare void a provision made by a husband in good faith for the support of his wife, unless very good cause was shown for such declaration."

1. We are assuming, for purposes of this case, that an unsealed agreement apparently in liquidation of the wife's claim to support may require some consideration other than the relinquishment of that claim, at least to the extent that it contemplates payments after remarriage of the wife. We make no ruling on this point.

2. The text of the letter is as follows:

"December 8, 1941.

"Dear Marjorie:

"In order to remove an ambiguity in the Note Agreement and in order to avoid an unintended result, I propose to begin the payments upon the Note as of December 15, 1941, to be applied in the same manner as if the Note were dated December 15, 1941. These payments, however, will cease after the payment due April 15, 1942 if the final decree of divorce has not been issued and if I am convinced that you do not intend faithfully to prosecute the proceedings for a final decree of divorce.

"If this is agreeable to you, please indicate your acceptance in the space below and return two executed copies to me.

"Very truly yours,

(s) ALFONS BEAUMONT LANDA
Alfons Beaumont Landa

"Accepted:

(s) MARJORIE MONDELL LANDA
Marjorie Mondell Landa"

3. Jackson v. Ashton, 11 Pet. 229, 36 U.S. 229, 247–248, 9 L.Ed. 698; Williston, Contracts § 217. See Lawall v. Rader, 2 Grant, Cas., Pa., 426, for the proposition that modification of part of a sealed contract does not affect so much of the original agreement as is consistent with the modification.

O'Connell v. Noonan, 1893, 1 App.D.C. 332. Agreements for support do not carry a presumption of illegality; on the contrary, good faith guarantees of maintenance are favored in the law. To strike them down will not mend the broken marriage or restore the parties to their former status. It may in many instances simply place a premium on sharp dealing by the former husband. In a case such as the present, therefore, we need not feel constrained to seek out some conjectured taint by raising legal and factual issues not adequately raised by an appellant who seeks to repudiate an agreement of long standing.

■ Appellant's affidavit, far from implying that the agreement's object was to induce his wife to institute divorce proceedings, stated that at the time it was entered into she was already "contemplating suing for divorce." The affidavit described the purpose of the agreement as being to provide "something more substantial for her [than the $150 monthly separation payments], as the separation payments would cease in the event of my death. * * * Marjorie Landa understood and I realized that the amounts which I was to pay her * * * were in nature no more or no less than alimony." Appellant's entire plea in avoidance of the contract was based on lack of consideration. Lack of consideration was likewise the only contention raised at the first hearing on the motion for summary judgment, which resulted in a two weeks' continuance at appellant's request. Not until the second and final hearing did appellant first announce his theory that the contract contravened public policy. Then he sought to attack it as having a "tendency" to "facilitate the divorce." But such an allegation, taken in the factual context

of the affidavit, did not impugn the validity of the agreement. As a practical matter, many separation agreements of unimpeachable validity "tend to facilitate" divorce by providing for the wife's maintenance and removing grounds of controversy over matters of support and property rights which might otherwise stand as a barrier to a mutually desired dissolution of the marriage. The ultimate question is not simply the "tendency" of the agreement, but its nature and purpose. Appellant's affidavit was unequivocal on these points: the payments were in the nature of alimony and their purpose was to provide more substantial support. We know of no objection interposed by public policy to such an agreement. Any substantial issue of fact was negatived by appellant's own statements, and he cannot now ask us to draw contrary conclusions on the basis of mere conjecture.[4] The granting of summary judgment was proper.

The judgment of the District Court will accordingly be

Affirmed.

FAHY, Circuit Judge.

I agree with the disposition of the question of consideration. On the other question, whether the recovery sought should be barred by public policy, my view is that this aspect of the case should not have been disposed of by summary judgment procedure, which is applicable only where there is no genuine issue of material fact. Rule 56, Fed.R.Civ.P., 28 U.S.C.A.; Sartor v. Arkansas Gas Corp., 1944, 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967; Dewey v. Clark, 1950, 86 U.S.App.D.C. 137, 180 F.2d 766. That such a factual issue emerges from the affidavits, it is sufficient for present pur-

---

4. Appellant cannot ask us, for example, to discover some improper intention on his part in writing the letter of December 8, 1941, set forth in footnote 2, *supra*, in view of the express statements on the point in his affidavit: "Shortly after executing the so-called [Note] agreement I realized the indefiniteness of it. The date on which payments could start was indefinite; it might be five, ten, or fifteen years hence or the payments might never start. *Therefore*, I ad-

dressed a letter to her under date of December 8, 1941, reading as follows: [giving text]." (Emphasis added.) Nowhere in appellant's affidavit does he allege or imply that the letter was vicious or illegal in its intention or effect, much less that it reflected improper motives on the part of himself or his wife (or both) at the time of the execution of the original Note Agreement. Appellant cannot complain if the courts accept his sworn word.

poses to point out that under date of December 8, 1941, the appellant wrote his wife as follows:

"In order to remove an ambiguity in the Note Agreement and in order to avoid an unintended result, I propose to begin the payments upon the Note as of December 15, 1941, to be applied in the same manner as if the Note were dated December 15, 1941. These payments, however, will cease after the payment due April 15, 1942 if the final decree of divorce has not been issued and if I am convinced that you do not intend faithfully to prosecute the proceedings for a final decree of divorce.

"If this is agreeable to you, please indicate your acceptance in the space below and return two executed copies to me."

The wife's acceptance is endorsed on this letter. There followed the divorce she obtained April 18, 1942. The issue whether or not the agreement to pay the $5,000 had divorce as its object, was made to induce the divorce, needed resolution because if that was the situation the agreement was contrary to public policy. See Cronan v. Cronan, 1917, 46 App.D.C. 343, 349; Maynard v. Hill, 1888, 125 U.S. 190, 211, 8 S.Ct. 723, 31 L.Ed. 654; Shaw v. Saxman, 1917, 46 App.D.C. 526; Cooper v. Cooper, D.C.Mun.App.1944, 35 A.2d 921, 923. I construe nothing in Dunbar v. Dunbar, 1903, 190 U.S. 340, 23 S.Ct. 757, 47 L.Ed. 1084, to the contrary. It is well settled that the courts will not enforce an agreement which contravenes public policy. The Kensington, 1902, 183 U.S. 263, 22 S.Ct. 102, 46 L.Ed. 190; McNeill v. Nevius, 1950, 88 U.S.App.D.C. 49, 187 F.2d 81; Restatement, Contracts § 598 (1932). The need for unimpeded channels of relevant information in court proceedings is not the sole basis for the policy which condemns an agreement having for its object the procurement of a divorce. Marriage is "an institution more basic in our civilization than any other." Williams v. North Carolina, 1942, 317 U.S. 287, 303, 63 S.Ct. 207, 215, 87 L.Ed. 279.

It is of no consequence that the question of public policy was not pressed upon the court until the second or final hearing, for it was pressed in time, and was indeed entertained and decided. The trial judge said he was inclined to agree that if the agreement was in consideration of the wife getting a divorce it would be contrary to public policy, but thought "the affidavit does not justify such an inference." I think the affidavits as a whole raised an issue in this regard and that summary judgment proceedings were therefore precluded. They are not a substitute for a hearing unless "it is quite clear what the truth is"; Sartor v. Arkansas Gas Corp., supra [321 U.S. 620, 64 S.Ct. 728]; Dewey v. Clark, supra. While it is not for us to say at this time how the issue should be decided, we should require, it seems to me, that the trial court subject the matter to the usual hearing process rather than dispose of it, as was done, as if no genuine issue were present.