LANDA

v.

**COMMISSIONER OF INTERNAL REVENUE.**

**COMMISSIONER OF INTERNAL REVENUE**

v.

**ASTIN.**

**Nos. 11888, 11889.**

United States Court of Appeals, District of Columbia Circuit.

Argued Dec. 1, 1953.

Decided Jan. 14, 1954.

Prettyman, Circuit Judge, dissented.

---

1. 62 Stat. 711 (1948).

2. See Pina v. United States, 165 F.2d 890 (C.A.9, 1948).

Before PRETTYMAN, BAZELON and FAHY, Circuit Judges.

BAZELON, Circuit Judge.

This controversy, here for the second time,[1] stems from the conflicting claims of Mr. Landa [2] and his former wife, Mrs. Astin.[3] Mr. Landa claims that certain payments which he made to Mrs. Astin are deductible from his gross income and includible in hers, under the provisions of § 22(k) of the Internal Revenue Code.[4] That section provides:

> "In the case of a wife who is divorced * * *, periodic payments * * * received subsequent to such [divorce] * * * in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband * * * under a written instrument incident to such divorce * * * shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband. * * *"

Mrs. Astin, on the other hand, claims these payments as repayment of principal, together with interest thereon, due on an indebtedness owing from him. To protect the revenue, the Commissioner of Internal Revenue assessed deficiencies against both and left them to resolve their conflict in the Tax Court.

Mr. Raymond N. Beebe, Washington, D. C., with whom Mr. Raymond C. Cushwa, Washington, D. C., was on the brief, for petitioner in No. 11888.

Mr. George F. Lynch, Sp. Asst. to the Atty. Gen., with whom Messrs. Ellis N. Slack and A. F. Prescott, Sp. Assts. to the Atty. Gen., were on the brief, for respondent in No. 11888 and petitioner in No. 11889.

Mr. Christopher A. Ray, Sp. Atty., Washington, D. C., Internal Revenue Service, entered an appearance for respondent in No. 11888 and petitioner in No. 11889.

Mr. Meredith M. Daubin, Washington, D. C., for respondent in No. 11889.

■ These are the pertinent facts which were before the Tax Court and before us on the prior appeal. The taxpayers married in 1930 and separated in 1937. For four years thereafter, Landa paid his wife approximately $300 per month for her support and an additional amount to cover her medical and automobile expenses. Then in December 1941, he entered into three agreements with her in connection with a contemplated divorce: The first, entitled

1. The prior decision is Landa v. Commissioner of Internal Revenue, 1953, 92 U.S. App.D.C. 196, 206 F.2d 431.

2. Petitioner in No. 11888.

3. Respondent in No. 11889.

4. 56 Stat. 816 (1942), 26 U.S.C. § 22(k) (1946).

"Agreement Pendente Lite," made provision for his payment of her expenses incidental to her procurement of a divorce in Florida. The second, entitled "Separation Agreement," recited, *inter alia*, that Landa "has heretofore been indebted to [his wife] in the sum of $30,000" but did not further identify the nature of such indebtedness. It provided for payments of $150 per month, whether or not their marriage was dissolved, but, in the event of such dissolution, the payments were to cease upon her remarriage. The third, entitled "Note Agreement," stated that he was "indebted to [her] in the sum of $30,000, which indebtedness was incurred after their marriage and while they were living together as husband and wife"; and that in event of their divorce he desired to "provide for [her] security * * * by giving evidence of the aforesaid indebtedness." It provided that within ten days after a final decree of divorce, he would give her a promissory note in the amount of $30,000, the conditions of which were set forth in a form of note attached to the agreement. The note provided for interest at the rate of six per cent, and payments in monthly installments of $200 each, "each installment, when so paid, to be applied first to the payment of interest accrued on the unpaid principal sum, and the residue thereof to be credited to said principal sum." At that rate of payment, the note would be fully paid in twenty-three years and two months since most of the earlier payments would be credited to interest.[5] In the event of her death before payment in full, the note was to be cancelled but there was no similar provision in the event of his death. It is the $200 monthly installment payments on this note that are in question here.

It will be recalled that during the four year period preceding the execution of these agreements, Mr. Landa paid his wife approximately $300 a month for her support plus amounts for her medical and automobile expenses. Under the agreements, however, she was to receive only $150 a month until the entry of the divorce decree, at which time the additional $200 monthly installment payments, in question here, were to begin. Because no such reduction, however temporary, was intended, Mr. Landa wrote a letter to his wife very shortly after the agreements were executed wherein he voluntarily agreed immediately to commence these installment payments even before the entry of a decree.[6] She obtained a final decree in April 1942 and on an undisclosed date thereafter, he executed the "Promissory Note."

In addition to the documentary evidence described above, the only other pertinent evidence adduced before the Tax Court concerning the nature of the "indebtedness" recited as consideration for the Note Agreement was Mr. Landa's uncontradicted oral testimony. He stated that the consideration for the execution of the Note Agreement was "[t]o

5. He also agreed to give her $5,000 in cash in the event of her remarriage. This payment was the subject of an appeal in this court in Landa v. Astin, 1951, 90 U. S.App.D.C. 86, 193 F.2d 369.

6. The letter referred to reads:
"December 8, 1941.
"Mrs. Marjorie Mondell Landa,
1300 – 30th Street, N.W.,
Washington, D. C.
"Dear Marjorie:
"In order to remove an ambiguity in the Note Agreement and in order to avoid an unintended result, I propose to begin the payments upon the Note as of December 15, 1941, to be applied in the same manner as if the Note were dated December 15, 1941. These payments, however, will cease after the payment due April 15, 1942 if the final decree of divorce has not been issued and if I am convinced that you do not intend faithfully to prosecute the proceedings for a final decree of divorce.
"If this is agreeable to you, please indicate your acceptance in the space below and return two executed copies to me.
　　　　"Very truly yours,
　　　　/s/　Alfons Beaumont Landa
　　　　　　Alfons Beaumont Landa
"Accepted:
/s/　Marjorie Mondell Landa
　　　Marjorie Mondell Landa"

provide maintenance and support for Mrs. Landa" and that the amount was determined by Mrs. Landa's counsel and himself. "It was an amount that we reached by negotiation that I would agree to pay her for her support and maintenance that would not cease with my death as alimony ordinarily does. She wanted a lump sum settlement, and we agreed on this amount." He also stated: there was no other consideration for the Note Agreement except the divorce; she never loaned him any money or made any gifts to him; and he believed "that a man is under legal obligation to support his wife and maintain her and that was the obligation here."

In its first disposition of the case, the Tax Court determined that the payments in question constituted repayments of principal and interest thereon and, as such, were not payments within the meaning of § 22(k) of the Internal Revenue Code. This determination rested upon its refusal "to ascribe probative weight to oral testimony contradicting" the written agreements. On appeal to this court, we viewed this refusal as "equivalent to a ruling that the testimony was inadmissible" and, for reasons stated in our opinion therein, held that this was error.[7] Although this oral testimony was in the record then before us, we declined to assess its weight because we thought it better practice for the fact finding tribunal to perform that function in the first instance. Accordingly, we remanded these cases for that purpose.

On remand, the Tax Court's opinion stated that its refusal to ascribe "probative weight" to the oral testimony did not mean that it did not weigh such testimony, but, rather that such testimony did not constitute the " 'weight of the proof.' " Then, on the basis of its observation that the written instruments were "more trustworthy than the recol-

lection of a witness giving contradictory oral testimony * * *," it reaffirmed its original finding of fact to the effect that the payments in question were repayments of principal together with interest thereon. This consolidated appeal followed.

We are firmly convinced that the Tax Court finding is clearly erroneous.[8] We hold, instead, that the monies in question constituted payments within the meaning of § 22(k) because they were made "subsequent to [the divorce] * * * in discharge of, a legal obligation which, because of the marital or family relationship, [was] * * * incurred by such husband * * * under a written instrument incident to such divorce * * *." The Tax Court rested its determination on the one reference, in the written agreement, to the consideration for the payments as an "indebtedness * * * incurred after their marriage and while they were living together as husband and wife." While this reference supports the Tax Court's view that these payments were repayment of an indebtedness, another provision in the agreement, cancelling all payments due after Mrs. Astin's death, supports the view that they were for alimony or support. And this latter view is overwhelmingly supported by other evidence in the record. Such evidence includes Mr. Landa's uncontradicted testimony that the sole consideration for the challenged payments was to provide support for his former wife. It also includes the following: the total payments of $350 provided for in the written agreements closely approximate the amounts which had theretofore been paid for support and maintenance during the four year period of separation of the parties; and even a temporary reduction of those amounts by reason of the written agreements' provision postponing execution of the note and the payments thereunder

**7.** Landa v. Commissioner of Internal Revenue, 92 U.S.App.D.C. at page 196, 206 F.2d at 432.

**8.** United States v. United States Gypsum Co., 1948, 333 U.S. 364, 395, 68 S.Ct.

525, 92 L.Ed. 746; Grace Bros. v. Commissioner of Internal Revenue, 9 Cir., 1949, 173 F.2d 170, 174; Massachusetts Protective Ass'n v. United States, 1 Cir., 1940, 114 F.2d 304, 309.

until the entry of the divorce decree, was avoided when Mr. Landa voluntarily undertook to commence the payments immediately.

 Since § 22(k)'s provision with respect to alimony was not enacted until the year following the execution of the written agreements, it might be reasonable to assume that the parties agreed to employ the note-for-indebtedness provisions found in the formal written documents purely as a device to distribute the tax burden between them by giving Mr. Landa tapering deductions over the years for payments of interest to be included in Mrs. Astin's gross income. Thus, it might be urged that the parties should be bound by their own device. While acceptance of this argument is tempting, we think its rejection compelled by the rule that "[i]n the field of taxation, administrators of the laws and the courts are concerned with substance and realities, and formal written documents are not rigidly binding." [9] The purpose of this rule is manifest. Whenever taxation is allowed to depend upon form, rather than substance, the door is opened wide to distortions of the tax laws which, after all, represent the legislative judgment for an equitable distribution of the tax burden generally. Clearly, this purpose is not advanced by applying the rule only if its serves to increase the tax in a particular case. "The taxpayer as well as the Commissioner of Internal Revenue is entitled to the benefit of this rule." [10]

Reversed and remanded to the Tax Court with directions to modify its determination in these consolidated cases in conformity with this opinion.

PRETTYMAN, Circuit Judge (dissenting).

The Tax Court decided an issue of fact. It saw the witness. Although on what is before us I might have reached a different conclusion, I cannot say that its finding was clearly erroneous. I would therefore affirm.

9. Helvering v. F. & R. Lazarus & Co., 1939, 308 U.S. 252, 255, 60 S.Ct. 209, 210, 84 L.Ed. 226.

10. Landa v. Commissioner of Internal Revenue, 92 U.S.App.D.C. at page 197, 206 F.2d at page 432.