*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-CV-1952

LAWRENCE A. HUBB, APPELLANT,

V.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CAB-4248-12)

(Hon. Peter A. Krauthamer, Trial Judge)

(Argued October 31, 2013                    Decided February 27, 2014)

*Michael L. Avery, Sr.*, filed a brief for appellant.

*Matthew W. Tievsky*, with whom *Marc Fielder* was on the brief, for Trial Lawyers Association of Metropolitan Washington, D.C., *amicus curiae*, in support of appellant.

*Laura Basem Jacobs* for appellee.

Before FISHER and BLACKBURNE-RIGSBY, *Associate Judges*, and KING, *Senior Judge*.

KING, *Senior Judge*:   On June 5, 2009, Lawrence A. Hubb was injured when Gregg Mutter's vehicle rear-ended Hubb's vehicle in Montgomery County, Maryland.   At the time of the collision, State Farm Automobile Insurance

Company covered Hubb's vehicle and Erie Insurance Company covered Mutter's vehicle. Soon after the accident, Hubb claimed no-fault personal injury protection ("PIP") benefits under his State Farm policy. Hubb's PIP policy with State Farm read:

> **b. Reimbursement**
>
> If we [State Farm] make payment under this policy and the person to or for whom we make payment recovers or has recovered from another party, then that person must: . . . (2) reimburse us to the extent of our payment.
>
> **Reduction and Nonduplication of Benefits**
>
> 3. No person may recover more than once for the same loss.

State Farm complied with Hubb's claim paying out $25,519.33 while Hubb negotiated his negligence claim against Mutter with Erie Insurance. Later, on September 27, 2011, Erie settled Hubb's negligence claim for $60,000. Following Hubb's settlement, State Farm sought reimbursement from him for its PIP payments under the terms of the coverage in an action filed in the Superior Court of the District of Columbia.

On May 17, 2012, the trial court granted Plaintiff State Farm's Motion for Summary Judgment and entered a Declaratory Judgment against Hubb for $25,519.33 as reimbursement for the company's PIP payment to Hubb. The trial court found that the terms of State Farm's policy required the insured to reimburse State Farm when the insured received an amount in compensation from a third-party that was higher than the PIP award. The trial court held that the terms of the coverage did not violate any relevant statute or public policy. This appeal followed. We affirm the trial court's ruling.

## I.  Statement of the Case

Hubb, who is joined in his appeal by the Trial Lawyers Association of Metropolitan Washington, D.C., acting as amicus curiae, argues that State Farm was only entitled to seek subrogation against another insurance company. In support of his claim, Hubb relies on the District of Columbia's Compulsory/No-Fault Motor Vehicle Insurance Act ("the No-Fault Act"), D.C. Code § 31-2411 (d) (2001) as support. Section 12 (d) of the No-Fault Act reads:

> (d) Subrogation. –
> (1) An insurer shall have a right of reimbursement *from any other insurer*, based upon a determination of fault, for any personal injury protection benefits paid or

obligated to be paid by that insurer as a result of an accident that involved 2 or more motor vehicles, at least 1 of which was of a type other than a passenger motor vehicle.

(2) An insurer which has paid or become obligated to pay personal injury protection benefits in any case not covered by paragraph (1) of this subsection may agree to receive a right of reimbursement *from any other insurer* with respect to some or all of those benefits.

D.C. Code § 31-2411 (emphasis added).

Hubb asks us to interpret the emphasized provision of the No-Fault Act to only allow an insurer to seek reimbursement from another insurer and to be the exclusive means of recovery of PIP benefits in these circumstances. By this reading, Hubb would limit State Farm's recovery of the PIP paid by them to the insured to a recovery solely from Erie Insurance. Hubb contends that the trial court's ruling allowing subrogation violated the plain language and legislative intent of the No-Fault Act. We disagree with Hubb's interpretation of the No-Fault Act and affirm the trial court's granting of State Farm's motion for summary judgment.

## II.    Standard of Review

We apply a de novo standard of review to issues of statutory interpretation. *Porter v. United States*, 769 A.2d 143, 148 (D.C. 2001) (quoting *District of Columbia v. Jerry M.*, 717 A.2d 866, 868 (D.C. 1998)).  "Summary judgment is proper under [District of Columbia] Superior Court Civil Rule 56 where the record shows that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law."  *Travelers Indem. Co. of Ill. v. United Food & Commercial Workers Int'l Union*, 770 A.2d 978, 985 (D.C. 2001) (citing *Big Builders, Inc. v. Israel*, 709 A.2d 74, 76 (D.C. 1998)).  "[W]here [insurance] contract language is not ambiguous, summary judgment is appropriate because a written contract duly signed and executed speaks for itself and binds the parties without the necessity of extrinsic evidence."  *Id.* (internal citations and quotation marks omitted).  "[C]ourts will invalidate contract terms that are contrary to public policy only in the clearest of cases, and with great caution."  *Moore v. Jones*, 542 A.2d 1253, 1255 (D.C. 1988) (citing *Landa v. Astin*, 90 U.S. App. D.C. 86, 88, 193 F.2d 369, 371 (1951)).  Our reluctance to interfere with the freedom to contract is a "paramount public policy" consideration that has deep roots in this jurisdiction.  *See Godfrey v. Roessle*, 5 App. D.C. 299, 304 (D.C. Cir. 1895).

The public's interest in the freedom to contract, though, has its limits and we will decline to enforce insurance policy provisions that directly conflict with the clear language of an unambiguous statute. *See Smalls v. State Farm Mut. Auto. Ins. Co.*, 678 A.2d 32, 35 (D.C. 1996) (invalidating a household exclusion clause that directly conflicted with the No-Fault Act's requirement that insurers provide at least $25,000 of personal injury coverage). This court's primary consideration is to give full effect to the plain meaning of a clear and unambiguous statute. *See O'Rourke v. District of Columbia Police & Firefighters Ret. & Relief Bd.*, 46 A.3d 378, 383 (D.C. 2012) (internal citations omitted); *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) (internal citations omitted).

### III.  History and Policy of the No-Fault Act

Insurers have been required to provide PIP coverage to their insureds in the District of Columbia since the District of Columbia Council passed the No-Fault Act in 1982.[1]  *See* D.C. Council, Report on Bill 4-140 (Feb. 16, 1982) (Establishing D.C. Law 4-155). The purpose of requiring no-fault or PIP coverage was to "provide adequate protection for victims who are injured in the District

---

[1] We note that while all insurance companies are required to offer no-fault personal injury protection ("PIP"), the insured is not required to purchase it. *See* D.C. Code § 31-2404 (a) (1)–(2) (2001).

. . . ." D.C. Code § 31-2401 (b). When the Council passed the No-Fault Act, it did so based on the fact that forty percent of drivers were uninsured. The Council wanted to spread the risks of injuries caused by auto accidents among the entire populace. *See id.* (a)(4); *Carter v. State Farm Mut. Auto. Ins. Co.*, 808 A.2d 466, 468 (D.C. 2002). As part of the No-Fault Act, compulsory PIP benefits were designed to provide, *inter alia*, medical expenses to a victim who is insured. *See id.* at 468 (internal citations and quotation marks omitted).

## IV. Statutory Analysis of the Subrogation Provision Under the No-Fault Act

It is uncontested[2] that under the common law, an insurer who paid medical expenses to its insured who was the victim of an auto accident would be entitled to enforce a subrogation clause in a policy when the victim received compensation from the tortfeasor. *See Higgins v. Allied Am. Mut. Fire Ins. Co.*, 237 A.2d 471, 472 (D.C. 1968).[3] In the pre-No-Fault Act era, there was neither a public policy

---

[2] Counsel for the Trial Lawyers Association of Metropolitan Washington, D.C. conceded this fact at oral argument.

[3] Indeed, the majority of jurisdictions considering this issue have reached the same result as we reached in *Higgins*. *See, e.g.*, *Traveler's Indem. Co. v. Rader*, 166 S.E.2d 157 (W. Va. 1969); *Western Cas. & Sur. Co. v. Bowling*, 565 P.2d 970, 971 (Colo. App. 1977); *Silinsky v. State-Wide Ins. Co.*, 289 N.Y.S.2d 541, 548 (N.Y. App. Div. 1968).

nor a statute to invalidate a subrogation clause like the one Hubb accepted in his insurance policy with State Farm.

The question, then, is whether the common law rule upholding subrogation clauses has been repealed by the No-Fault Act. Hubb argues that the statute has changed the common law rule because the explicit language of § 31-2411 (d), quoted above, only allows an insurer to seek subrogation from *another insurer*. In support of his contention, Hubb cites the principle of statutory construction, *expressio unius est exclusio alterius*, which means that "the mention of one thing implies the exclusion of another." *McCray v. McGee*, 504 A.2d 1128, 1130 (D.C. 1986). Hubb argues that because the statute explicitly allows an insurer to seek subrogation from another insurer but is silent with regard to seeking subrogation from the insured, the statute implicitly excludes subrogation from the compensated insured victim.

Hubb contrasts § 31-2411 (d), which does not mention the right to subrogate from an insured person, with § 31-2406 (f)(5), which he argues permits an insurer to compel its insured to repay benefits from an uninsured motorist policy payments. He contends that the two statutes taken together demonstrate that the

Council knew how to authorize reimbursement payments by allowing subrogation from an insured in § 31-2406 (f)(5) but did not do so in § 31-2411 (d).

Further, Hubb contends that the trial court erred in ruling that this court's decision in *Murrell v. Criterion Ins. Co.*, 551 A.2d 95, 96 (D.C. 1988) supports the determination that an insurer can seek reimbursement from an insured. In *Murrell*, we upheld a "payback" clause that required the insured to repay the insurer any money she received from a settlement of her claims. Hubb distinguishes *Murrell* as pertaining exclusively to the statutory allowance for reimbursements under the uninsured motorist payments. Hubb's argument, however, rests on a misreading of § 31-2406 (f)(5).

Section 31-2406 (f) provides:

> *Mandatory uninsured motorist protection. . . .*
> (5) To the extent of any payment made to any person by the insurer under the ***coverage required by this section*** and subject to the terms and conditions of the coverage, the insurer is entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of any person against any other person legally responsible for the bodily injury or death for which the payment is made, including any amount recoverable from an insurer which is or becomes the subject of an insolvency proceeding through such proceedings or in any other lawful manner.

(6) No insurer shall attempt to recover any amount against the insured of an insurer which is or becomes the subject of insolvency proceedings.
(7) Any motor vehicle policy of insurance may include terms and conditions that preclude stacking of uninsured motor vehicle coverages.

(Emphasis added.)

Hubb reads "coverage required by this section" as exclusively referring to coverage that is required by *subsection* (f) of § 31-2406 of the No-Fault Act, which is the *subsection* that exclusively applies to uninsured motorist payments.[4] Hubb would limit subrogation only to payments made for uninsured motorist coverage because only uninsured motorist coverage is required under subsection (f). In making this argument, Hubb misinterprets the meaning of the statute.

Congress organizes federal statutes in the United States Code in the following order: title, section, subsection, paragraph, etc. Thus, a paragraph is a sub-part of a subsection, which in turn is a sub-part of a section, which is a sub-part of a title. *See* HOUSE OFFICE OF LEGISLATIVE COUNSEL, U.S. HOUSE OF REPRESENTATIVES, GUIDE TO LEGISLATIVE DRAFTING (2013). The District of

---

[4] Hubb's assertion on this point would have been persuasive if the language relied on stated "coverage required by this *subsection*." If the operative word were "subsection" then, because subsection (f) of § 31-2406 applies to "mandatory uninsured motorist protection," paragraph (5) would apply only to that coverage.

Columbia organizes its local statutes in a fashion similar to the federal code. *See generally* D.C. Code (2012 Repl.). In this instance, the relevant part of the No-Fault Act uses the word "section" for a reason. "Section" in this context refers to the entirety of § 31-2406 of the Act, which includes all of the subsections from (a) to subsection (f), which includes paragraph (5) of subsection (f)—i.e., § 31-2406 (f)(5). Paragraph (5)—§ 31-2406 (f)(5)—allows an insurer to seek reimbursement of any payment it has made to an insured "under [any] coverage required by this section." Section 31-2406 of the No-Fault Act also includes subsection (a)(1)(D) that requires an insurer to offer PIP coverage:

> (D) Each insurer selling motor vehicle insurance in the District shall be required to offer insurance which shall provide at least all minimum benefits required by this chapter with respect to: (i) property damage liability; (ii) third-party personal liability; and (iii) uninsured motorist protection. In addition, each insurer ***shall offer optional personal injury protection*** insurance required by § 31-2404 and underinsured motor vehicle coverage as required by this section. Taxicab insurers and self-insurers shall be exempt from the requirement to offer optional personal injury protection insurance. Taxicab insurers and self-insurers shall also be exempt from the requirements of § 31-2404 that they offer uninsured motorist protection and underinsured motor vehicle coverage.

(Emphasis added.)

By the explicit terms of § 31-2406 (a)(1)(D), therefore, an insurance company is required to offer PIP coverage in the District of Columbia.[5] Since PIP is required to be offered by § 31-2406 then the subsection that allows subrogation for all insurance payments "required by this section," § 31-2406 (f)(5), applies to PIP coverage as well. This interpretation makes perfectly good sense: because the statute requires the insurance company to provide PIP coverage and to pay the insured's loss regardless of fault, it is fair and reasonable to allow that insurance company to recoup the PIP payment from its insured who has agreed to a subrogation provision like the one present here and who has been reimbursed by the party at fault.

Hubb, however, relies upon a footnote in *Brand v. Government Emps. Ins. Co.*, No. Civ. A. 04-01133, 2005 WL 3201322 at *7 n.2 (D.D.C. 2005), where the United States District Court for the District of Columbia observed PIP to be *optional* insurance under § 31-2404. While it is correct to say that PIP is optional for the consumer to purchase, § 31-2406 (a)(1)(D) explicitly requires insurers to provide that coverage. We interpret § 31-2406 (f)(5) to provide that insurers may

---

[5] An insurance company is required to offer PIP coverage; however, an insured is not required to purchase PIP coverage. Insurers are also required to offer property damage liability, third-party personal liability, and underinsured motorist protection. *See* § 31-2406 (a)(1)(D); see *also supra* note 1.

subrogate any payments for coverage that insurers are required to provide to their insureds. We are satisfied in this context that "required" includes all the coverage the insurer must provide—i.e., coverages that are the insurer's responsibilities— because § 31-2406 (f)(5) then explains the right of an insurer to seek subrogation.

Moreover, we reject Hubb's reliance on the Latin maxim *expressio unius est exclusio alterius* in its interpretation of § 31-2411. As this court has observed, that maxim is an aid to construction of a statute rather than a rule of law. *See Council of District of Columbia v. Clay*, 683 A.2d 1385, 1390 (D.C. 1996) (citing *Neuberger v. Commissioner of Internal Revenue*, 311 U.S. 83, 88 (1940)). We apply such a maxim "with a considerable measure of caution," and ignore such an aid when the plain meaning of the statute and the intent of the legislature is clear from the expressed words in the statute. *See Clay*, 683 A.2d at 1390 (citing *National Petroleum Refiners Ass'n v. Federal Trade Comm'n*, 157 U.S. App. D.C. 83, 87, 482 F.2d 672, 676 (1973), *cert. denied*, 415 U.S. 951 (1974)). Section 31-2411 (d) allows an insurer a statutory right to seek subrogation for its payment from the insurer of a tortfeasor whereas the statute is silent with respect to the right of the insurer to seek subrogation from the compensated victim.

Hubb's argument relies on his view that § 31-2406 (f)(5) says "section" when it means "subsection." However, the plain meaning of § 31-2406 (f)(5) is that the allowance for subrogation applies to that entire section of the No-Fault Act—i.e., § 31-2406—rather than exclusively to that particular subsection—i.e., subsection (f). There is nothing in the legislative history of the No-Fault Act to suggest that the word "section" in § 31-2406 (f)(5) was a mistake and that the Council meant "subsection" instead.[6]

## V.    Policy Considerations

Finally, there is nothing in the language or the legislative history of the No-Fault Act to suggest that the Council intended it to repeal the common law rule set forth by this court in *Higgins* that insurers and the insured may contract for

---

[6] See the amendments to the No-Fault Act. At no point, does the Council mention § 31-2406 (f)(5)'s application as exclusive to uninsured motorist coverage: Sept. 18, 1982, D.C. Law 4-155, § 7, 29 DCR 3491; Mar. 4, 1986, D.C. Law 6-96, § 2(e), 32 DCR 7245; Feb. 24, 1987, D.C. Law 6-192, § 19, 33 DCR 7836; Sept. 20, 1996, D.C. Law 11-160, § 2(b), 43 DCR 3722; May 21, 1997, D.C. Law 11-268, § 10(v), 44 DCR 1730; June 8, 2006, D.C. Law 16-117, § 201(b), 53 DCR 2548; Mar. 14, 2007, D.C. Law 16-279, § 101, 54 DCR 903; Mar. 25, 2009, D.C. Law 17-353, §§ 197(a), 246, 56 DCR 1117; Apr. 27, 2013, D.C. Law 19-290, § 2(b), 60 DCR 2343.

subrogation from the compensated victim.[7] Upholding subrogation clauses in insurance contracts accords with the public policy of freedom to contract and does not interfere with the No-Fault Act's purpose of providing adequate protection for victims of motor vehicle accidents. Insurers are required under the Act to provide and pay PIP coverage when the insured opts to purchase it, which ensures that covered victims fully recover out-of-pocket expenses. *See Dimond v. District of Columbia*, 253 U.S. App. D.C. 111, 118, 792 F.2d 179, 186 (1986) (holding that "adequate protection" under the No-Fault Act refers to "full recovery of out-of-pocket expenses").

Our reading of the No-Fault Act accords with the Act's policy against double recovery. *See Fisher v. Government Emps. Ins. Co.*, 762 A.2d 35, 40 (D.C. 2000) (stating that double recovery is contrary to the No-Fault Act). "Statutes governing double recovery and primacy of insurance payments are traditional exercises of state authority." *Id.* (quoting *Travitz v. Northeast Dep't ILGWU*

---

[7] Statutes which impose duties or burdens or establish rights or provide benefits not recognized by the common law have generally been held to be subject to strict, or restrictive, interpretation. *See* 3 Sutherland Statutory Construction § 61:1 (7th ed.); *see also Estate of Gulledge*, 673 A.2d 1278, 1281 (D.C. 1996); *Rusinek v. Schultz, Snyder & Steele Lumber Co.*, 309 N.W.2d 163, 166 (Mich. 1981) (holding that Michigan No-Fault Act did not abolish common-law action for loss of consortium where nothing in its language or legislative purpose required abolition).

*Health & Welfare Fund*, 13 F.3d 704, 709 (3d Cir. 1994)). Hubb claims he suffered a total of $30,050.63 of out-of-pocket expenses for lost wages and medical expenses as economic damages. As previously mentioned, Hubb received $25,519.33 from State Farm for PIP and another $60,000 from Erie Insurance to settle his claim against the tortfeasor. Allowing State Farm to collect its PIP payments means that Hubb will still be entirely compensated for economic and noneconomic damages by Erie Insurance.[8]

Hubb argues that this settlement is insufficient to cover his injuries, "By its nature, a settlement is a compromise of a claim and does not constitute a full recovery of the claimant's damages." However, it is not the role of this court to determine the amount of damages a victim claims compared to the amount for which the victim agrees to settle those claims. The District of Columbia encourages settlements and we presume that a settled amount is fair and arrived at in good faith. *See Taylor v. Tellez*, 610 A.2d 252, 254 (D.C. 1992) (quoting *Early Settlers Ins. Co. v. Schweid*, 221 A.2d 920, 922 (D.C. 1966)). Considering the D.C. Council's policy against a windfall, which is expressed directly in the No-

---

[8] Since Erie Insurance and Hubb agreed to settle his claims against Mutter for $60,000 then that recovery essentially includes both economic and noneconomic damages. $60,000 would allow Hubb $30,050.63 in compensation for his out-of-pocket economic damages and the remaining $29,949.37 would count as compensation for his noneconomic damages like pain and suffering.

Fault Act—e.g., § 31-2406 (g) (prohibiting a victim from claiming more PIP benefits than is necessary to compensate for the deductible)—and acknowledged by this court in *Fisher*, it is fair to allow State Farm to reclaim its payout.

## VI.　Conclusion

We hereby affirm the trial court's ruling that State Farm may seek subrogation from Hubb under the subrogation clause in Hubb's insurance policy. We so hold because the No-Fault Act, § 31-2406 (f)(5) specifically authorizes subrogation for payments made "by the insurer under the coverage required by this section." "[U]nder the coverage required by this section" refers to all coverage that insurers are required to provide under § 31-2406, which includes PIP coverage.[9] *See* § 31-2406 (a)(1)(D). Insurers have a statutory right to seek subrogation from other insurers, § 31-2411 (d), but nothing in the No-Fault Act suggests that the Council intended the Act to prevent insurers from seeking recovery from an insured who has agreed to a subrogation clause.

---

[9] As noted in *supra* note 5, § 2406 (a)(1)(D) also includes (i) property damage liability; (ii) third-party personal liability; and (iii) uninsured motorist protection, as well as underinsured motor vehicle coverage, as required coverages.

For the foregoing reasons, the decision of the trial court is affirmed.

*So ordered.*