Robert G. ELWELL, Appellant,

v.

Carole E. ELWELL, Appellee.

Nos. 06–FM–954 to 06–FM–956.

District of Columbia Court of Appeals.

Argued April 15, 2008.
Decided May 8, 2008.

Alan B. Soschin, Washington, DC, for appellant.

Carole E. Elwell, pro se.*

Before FISHER and THOMPSON, Associate Judges, and NEBEKER, Senior Judge.

NEBEKER, Senior Judge:

Appellant Robert G. Elwell appeals from a final order of the trial court denying his complaint to terminate or reduce spousal support. On appeal, he contends that the trial court erred in concluding that the parties' settlement agreement did not include a term requiring the renegotiation of alimony upon appellant's retirement. We agree and reverse.

## I.

In 1992, appellant filed for divorce. At a hearing before Judge Harold L. Cushenberry, Jr., on May 4, 1994, the parties entered into an oral separation agreement concerning everything except the di-

---

* Appellee has filed two motions with this court, but given our disposition, these motions are denied as moot.

vision of personal property. Counsel for appellant read the terms of the agreement into the record, including a provision for alimony.[1] After the terms were stated, the trial judge began to examine the parties in order to determine if they agreed. Both parties said that they agreed to be bound by the separation agreement. Counsel for appellant interrupted this examination, explaining that he had inadvertently omitted a term. Then, he and counsel for appellee explained what was missing:

> [Appellant's Counsel]: Your Honor, I omitted something.
>
> The Court: Did you? What did you omit?
>
> [Appellant's Counsel]: And, I need to make sure that I didn't omit anything else with respect to the alimony. The alimony, of course, is payable—
>
> [Appellee's Counsel]: Until death or remarriage.
>
> [Appellant's Counsel]: Until death or remarriage.
>
> The Court: Right.
>
> [Appellant's Counsel]: To be renegotiated on retirement based upon the incomes at that time. But, in no event would Mr. Elwell retire before the age of sixty-five.
>
> The Court: Okay. With that addendum, both parties are in agreement?
>
> Mrs. Elwell: Say that once more.
>
> [Appellant's Counsel]: The spousal support is payable until your remarriage or death, or until Mr. Elwell retires. In no event, before the age of sixty-five on the retirement. At re-

tirement, spousal support would be negotiated—renegotiated based upon the incomes of the parties at that time.

> Mrs. Elwell: That's two years from now. Three years from now. I forgotten how old you are.
>
> Mr. Elwell: What?
>
> The Court: She forgot how old you were.
>
> Mr. Elwell: I will be sixty-two this Saturday.
>
> Mrs. Elwell: So, three more years until we negotiate?
>
> The Court: That's right. Only if he retires.
>
> [Appellant's Counsel]: Only if he retires.
>
> [Appellee's Counsel]: Only if he retires.
>
> The Court: If he continues to work—
>
> [Appellee's Counsel]: Otherwise, we come to court.
>
> The Court: That's right.

Although the parties agreed to reduce this oral separation agreement to writing and sign it, this was never done, but the Superior Court is a court of record since 1970. *See* D.C.Code § 11–901 (2001). Thus, what was stated for the record is the operative equivalent of a written and signed agreement. *See Braxton v. United States,* 395 A.2d 759, 767 (D.C.1978). This oral separation agreement has been found to be valid four times: by Judge Reggie B. Walton (Oct. 23, 1995), Judge Frederick D. Dorsey (Nov. 15, 1996), Judge Stephanie Duncan–Peters (Oct. 30, 1997), and Judge

---

1. Appellant's counsel stated:

 Spousal Support. Starting in May 1995 through—excuse me, May 1994 through May 1995, Mr. Elwell will pay one thousand dollars a month spousal support. Thereafter for the next two years, that would be through May of 1997, he will pay fourteen hundred dollars a month spousal

 support. And, thereafter, it will go to twelve hundred dollars, be reduced to twelve hundred dollars a month. The lower figure of twelve hundred dollars a month will kick in sooner in the first month after the house is sold, if the house is sold sooner.

Judith N. Macaluso (Feb. 23, 2006). The subsequent transcription of the agreement from the court reporter's records suffices for purpose of enforcement.

After a trial, Judge Duncan–Peters issued a Judgment of Absolute Divorce on October 30, 1997, which divided the parties' personal property. In her Findings of Fact, Judge Duncan–Peters stated that the parties had previously entered into an oral separation agreement and recited its terms from the transcript of the 1994 hearing. However, this recitation did not include the additional term providing for the renegotiation of alimony upon Mr. Elwell's retirement. After the recitation of the separation agreement's terms, alimony was mentioned in only one other sentence in the trial court's 36–page opinion. There, the court explained that alimony was not at issue at that stage of the parties' lengthy divorce proceedings: "The alimony issue was resolved through the parties' private agreement...."

On January 31, 2005, appellant's 23–year tenure working for his employer ended after his employment contract expired and was not renewed. Appellant, who is in his late 70's, was unable to find another job and receives two small retirement pensions. Five days after his employment concluded, appellant filed a complaint to terminate or reduce spousal support. The trial court considered the issue of whether the alimony renegotiation term was a part of the parties' 1994 separation agreement. At an evidentiary hearing, Judge Macaluso examined appellee about this term:

Q: ... Did you agree that the alimony provisions would be renegotiated after Mr. Elwell retired?

A: I'm not sure if I did agree, actually, did I on the transcript?

Q: Well, I don't know. It's ambiguous. That's why I'm asking you. Did you agree or not?

A: I think I probably did, because I wanted to get out of there, but could I see the transcript myself?

Q: Yeah, sure.

A: It says what I said.

Although appellee conceded that she likely did agree to the alimony renegotiation term, the trial court held that this term was not a part of the 1994 separation agreement. In her February 23, 2006, order, Judge Macaluso explained that Judge Duncan–Peters made a factual finding that the alimony renegotiation term was not a part of the 1994 separation agreement. Judge Macaluso concluded that the "May 4, 1994, transcript reveals that neither Ms. Elwell nor Mr. Elwell testified that they intended to be bound by a provision for renegotiation of the alimony amount." The court further stated that the parties' later conduct demonstrated that the additional term was not a part of the agreement. Ultimately, the trial court concluded that "Judge Duncan–Peters's construction of the alimony provisions is binding between the parties under principles of res judicata and collateral estoppel."

**II.**

■ Appellant first contends that the trial court erred in holding that his claim is barred by the doctrines of *res judicata*, claims preclusion, and *collateral estoppel*, issue preclusion. He argues that the trial court erroneously concluded that Judge Duncan–Peters had decided previously in 1997 that the additional alimony renegotiation term was not a part of the separation agreement. We review application of these doctrines *de novo*. *See AMEC Civil LLC v. Mitsubishi Int'l Corp.*, 940 A.2d 131, 133 (D.C.2007).

■ The principle of *res judicata* "precludes relitigation of the same claim between the same parties." *Borger*

*Mgmt., Inc. v. Sindram,* 886 A.2d 52, 59 (D.C.2005) (citation omitted). We consider "(1) whether the claim was adjudicated finally in the first action; (2) whether the present claim is the same as the claim which was raised or which might have been raised in the prior proceeding; and (3) whether the party against whom the plea is asserted was a party or in privity with a party in the prior case." *Patton v. Klein,* 746 A.2d 866, 870 (D.C.1999) (quoting *Washington Med. Ctr., Inc. v. Holle,* 573 A.2d 1269, 1283 (D.C.1990)). Here, appellant's present claim is different than what was considered and adjudged in Judge Duncan–Peters' order. There, the court noted that "[t]he alimony issue was resolved through the parties' private agreement...." There is no indication that appellant claimed in that matter that his alimony payments should be reduced pursuant to the additional alimony renegotiation term. This is to be expected because appellant was still gainfully employed at the time of that proceeding. Therefore, the condition precedent to exercising the additional alimony retirement term had not been satisfied and this issue might not have even been ripe for adjudication at that time. *See Metro. Baptist Church v. District of Columbia Dep't of Consumer & Regulatory Affairs,* 718 A.2d 119, 130 (D.C.1998). Thus, we conclude that *res judicata* does not bar appellant's claim.

Similarly, appellant's claim is not precluded by the doctrine of *collateral estoppel,* which prohibits "the relitigation of factual or legal issues decided in a previous proceeding and essential to the prior judgment." *Borger, supra,* 886 A.2d at 59. "In order for collateral estoppel to apply '(1) the issue must be actually litigated and (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; (4) under circumstances where the determination was essential to the judgment, and not merely dictum.'" *Patton, supra,* 746 A.2d at 871 (quoting *Washington Med. Ctr., supra,* 573 A.2d at 1283) (citations and modifications omitted). Here, however, there is no indication that Judge Duncan–Peters was presented with the issue of whether this additional alimony renegotiation term was a part of the separation agreement. The purpose of the court's order was to divide the parties' personal property and alimony was not at issue at that stage of the proceedings.[2] The recitation of the oral separation agreement was likely included for the convenience of the readers and the litigants. There is simply no indication Judge Duncan–Peters adjudged on the merits that this renegotiation term was not a part of the separation agreement. "When 'a prior judgment [does] not indicate clearly what issues were resolved ... the result is that the opaque judgment fails to preclude relitigation.'" *Major v. Inner City Prop. Mgmt.,* 653 A.2d 379, 382 (D.C.1995) (quoting C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4420, at 184 (1981)). Although Judge Duncan–Peters thoroughly addressed the issues before her, her opinion shows that this issue was not presented to her. Therefore, we hold that appellant's claim is not barred by *res judicata* or *collateral estoppel.*

### III.

After concluding that appellant's claim is not procedurally barred, we now consider whether this additional alimony renegotiation term was part of the parties' oral separation agreement. De-

---

**2.** At the beginning of its order, the trial court noted that "[t]his matter came before the Court for trial on March 10, 11 and 12, 1997, on the portion of the case that involved the divorce and distribution of personal property pursuant to D.C.Code § 16–910."

termining the existence and contents of a written or oral agreement is a question of law, which we review *de novo. Kramer Assocs., Inc. v. Ikam, Ltd.,* 888 A.2d 247, 251 (D.C.2005) (citing *Rosenthal v. Nat'l Produce Co.,* 573 A.2d 365, 369 n. 9 (D.C. 1990)); *see* 17 Am.Jur. 2d *Contracts* § 332 ("[T]he construction of a contract is a question of law for the court").

During the 1994 hearing, both appellant and appellee testified in court that they had agreed to be bound by the terms of the separation agreement before the additional alimony renegotiation term was read into the record. Because of this, appellee claims that this provision is not a part of the parties' contract since she never explicitly assented to it. However, in family law matters, parties to a separation agreement are not required to testify in open court that they agreed to each term of a contract. *Cf. In re Robertson,* 940 A.2d 1050, 1059 (D.C.2008), and *Edwards v. United States,* 766 A.2d 981, 987, 990 (D.C.2001) (noting that criminal plea bargains are contracts and defendants must personally express their acceptance before a trial judge).

The conduct of appellee and her counsel at the May 4, 1994, and January 31, 2005, hearings shows that she agreed to the additional alimony renegotiation term. In court, parties speak through their attorneys. *See Pierce v. United States,* 402 A.2d 1237, 1249 (D.C.1979) (Harris, J., dissenting) (noting that "counsel normally are deemed to speak for their clients"). Here, appellee's counsel spoke and assisted appellant's counsel in stating the missing alimony renegotiation term. The transcript reveals that appellee's counsel literally completed appellant's sentence for him, which demonstrates that both attorneys were in agreement as to this additional term. There is no indication in the record that appellee objected to her counsel's statements. In *Makins v.*

*District of Columbia,* this court, sitting en banc, noted that "attorneys had apparent authority to settle [when] the clients in those cases were present in the courtroom." 861 A.2d 590, 596 n. 4 (D.C.2004) (en banc). Moreover, after the additional term was stated, Judge Cushenberry asked, "With that addendum, both parties are in agreement?" Neither appellee nor her attorney objected to this additional term on the record. At appellee's request, the additional term was repeated. The judge then said, "That's right," and, hearing no objection, moved on to another issue. Because appellee's counsel helped complete the additional alimony renegotiation term and neither appellee nor her attorney objected to the term, it is clear that appellee had agreed to it. Appellee's later conduct leads to the further inference that this additional alimony renegotiation term was a part of the parties' 1994 separation agreement. At a hearing on January 31, 2005, Judge Macaluso asked appellee if she had agreed to this term during the May 4, 1994 hearing, to which appellee replied, "I think I probably did . . . ."

It is a principle of contract law that parties may generally not be bound by silence. *See William F. Klingensmith, Inc. v. District of Columbia,* 370 A.2d 1341, 1343 (D.C.1977) (citing Restatement (Second) of Contracts § 72 (1964)). Here, however, the words and conduct of both parties manifested their assent to the separation agreement and the additional alimony renegotiation term. Both parties negotiated and entered into an oral separation agreement outside of court. The terms of the agreement were read into the record and both parties stated that they had agreed to the separation agreement.

We, therefore, hold that the additional alimony renegotiation term was a part of the parties' 1994 separation agreement, reverse the order of the trial court, and

remand the case for enforcement of the contract. Upon remand, the parties should be directed to renegotiate alimony pursuant to their agreement since appellant has effectively retired. In the event that negotiation fails, the trial court may exercise its equitable powers to consider modification of the amount of alimony. *See Lake v. Lake*, 756 A.2d 917, 920–21 (D.C.2000) (explaining the factors courts consider in determining an alimony award); D.C.Code § 16–913 (2008 Supp.).

## IV.

 Lastly, appellant contends that the trial court erred in concluding that the separation agreement was not merged. Whether an agreement was merged with an order of the trial court or was instead incorporated by reference is significant in determining how an agreement for spousal support may be modified. *See Hamel v. Hamel*, 539 A.2d 195 (D.C.1988). Appellant argues that Judge Duncan–Peters had merged the agreement into her 1997 order. Before the trial court, however, appellant took the contrary position and stated that the agreement had not been merged. At a hearing on June 29, 2005, appellant's counsel stated that the 1994 settlement agreement was "ratified and incorporated but not merged." "[W]e have repeatedly held that a [litigant] may not take one position at trial and a contradictory position on appeal." *Hollins v. Fed. Nat'l Mortgage Ass'n*, 760 A.2d 563, 572 (D.C.2000) (quoting *Brown v. United States*, 627 A.2d 499, 508 (D.C.1993)). We, therefore, reject this claim. Accordingly, we reverse the order of the trial court and remand for further proceedings consistent with this opinion.

*So ordered.*