*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-CV-12

TERRIE C. WHITING, APPELLANT,

V.

WELLS FARGO BANK, N.A., AS TRUSTEE UNDER POOLING AND SERVICING AGREEMENT DATES AS OF SEPTEMBER 1, 2006 SECURITIZED ASSET BACKED RECEIVABLES LLC TRUST 2006-HE2 MORTGAGE PASSTHROUGH CERTIFICATES, SERIES 2006-HE2, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(CA-5375-15)

(Hon. Brian F. Holeman, Trial Judge)

(Submitted March 25, 2020                    Decided July 9, 2020)

*Donald M. Temple* for appellant.

*Lisa M. Ernest* for appellee.

Before BLACKBURNE-RIGSBY, *Chief Judge*, THOMPSON, *Associate Judge*, and GREENE, *Senior Judge, Superior Court of the District of Columbia*.[*]

THOMPSON, *Associate Judge*:

---

[*] Sitting by designation pursuant to D.C. Code § 11-707 (a) (2012 Repl.).

PER CURIAM: On November 27, 2017, the Superior Court, in a bench ruling, granted summary judgment to plaintiff/appellee Wells Fargo Bank, N.A. ("Wells Fargo") on its complaint for judicial foreclosure. Thereafter, Wells Fargo asked the court to enter a final judgment, and defendant/appellant Terri C. Whiting[1] responded by asking the court to revisit its summary judgment ruling. The court denied Whiting's request in a written "Order" dated November 27, 2018, and on the same day issued an "Order of Judgment" authorizing Wells Fargo to conduct a foreclosure sale.[2] The instant appeal followed.[3] We affirm.

---

[1] Appellant's name also appears in the record as "Terrie C. Whiting."

[2] Ms. Whiting's Notice of Appeal lists November 28, 2018, as the date of the order appealed. The Order of Judgment is dated November 27, 2018, but bears a file stamp dated November 28, 2018, which is also its docket date. We include these particulars because Wells Fargo argues that the court should dismiss this appeal because Ms. Whiting failed to list the correct date of the order she has appealed. We think the discrepancy we have described adequately explains the situation and that the requirements of D.C. App. R. 3(c)(1)(B) are satisfied.

[3] The Superior Court treated Ms. Whiting's request to revisit the summary judgment ruling as a (non-meritorious) post-judgment motion under Super. Ct. Civ. R. 59 or 60. The court's November 27, 2018, "Order" denied that post-judgment motion. In light of Ms. Whiting's arguments, we assume that she intended to appeal not only the November 27, 2018, Order and the Order of Judgment, but also the November 27, 2017, grant of summary judgment to Wells Fargo. *See Flax v. Schertler*, 935 A.2d 1091, 1099-1100 (D.C. 2007) (explaining that an appeal from a final judgment "dr[aws] into question all of the trial court's prior non-final rulings and orders"). We so conclude even though the Order of Judgment is the only order attached to Ms. Whiting's Notice of Appeal.

(continued…)

## I.

The foreclosure action concerned property located at 1317 W Street, S.E. (the "Property"). Ms. Whiting acquired title to the Property in 1998 and thereafter used it as collateral to obtain mortgage and home equity loans. According to Ms. Whiting, at some point, she was the victim of a "mortgage scam" by one Marcus Deloatch, who caused her "to purportedly convey the Property" to him on May 22, 2006, by a document referred to in the record as the "Deloatch Deed." Mr. Deloatch thereafter obtained mortgage loans from Wells Fargo's predecessor-in-interest and executed deeds of trust (the "Deeds of Trust") utilizing the Property as collateral.

In December 2009, Ms. Whiting filed suit in the U.S. District Court for the District of Maryland against Mr. Deloatch and Wells Fargo, alleging that her signature on the Deloatch Deed was forged, and seeking declaratory and injunctive relief, including a determination regarding her ownership rights to the Property and the validity of the Deeds of Trust (which had been assigned to Wells Fargo). In response, Wells Fargo filed a counterclaim against Ms. Whiting by which it sought

---

(…continued)

Contrary to Wells Fargo's argument, and for the reasons explained in Ms. Whiting's reply brief, the appeal is not untimely.

equitable subrogation and equitable liens against the Property, on the ground that Wells Fargo (or its predecessor-in-interest) had advanced the funds that paid off Ms. Whiting's mortgage and home equity loans.

Ms. Whiting and Wells Fargo eventually entered into a "Settlement Agreement and Release" (the "Settlement Agreement" or the "Agreement"), under which they agreed to file a consent motion seeking entry of a default judgment against Mr. Deloatch and to ask the court for the following relief: a declaration "that the May 22, 2006 Deed purporting to transfer the Property from Whiting to Deloatch, is declared to be null and void, and that Deloatch has no interest in the Property"; and a declaration "that the Property is held in fee simple absolute by Whiting, subject however, to the valid and enforceable liens of the First Deed of Trust and Second Deed of Trust" for the benefit of Wells Fargo.[4] The Settlement Agreement also stated that the lender (Wells Fargo) or its agent:

> may, but shall not be required to, immediately commence foreclosure proceedings against the Property; provided, however, that the Lender shall not schedule the sale of the Property (or conduct the sale) earlier than a date that is after six (6) months from the date of this Agreement. If, on or before six (6) months from the date of this

---

[4] The Agreement states that it was to be "construed in accordance with the laws of the State of Maryland as of the date of this Agreement, without regard to conflict of laws principles."

Agreement (time being of the essence), Whiting is able to obtain financing and/or other means with which to pay Lender a total of $121,270.00 (the 'Settlement Payment') (and if Lender actually is in receipt of the Settlement Payment on or before six (6) months from the date of this Agreement), then Lender shall not proceed with any foreclosure proceedings against the Property. . . .  If[] [Lender] is not in receipt of the Settlement Payment on or before six (6) months from the date of this Agreement, Whiting shall not have the right to make the Settlement Payment in exchange for the release of the First Deed of Trust and the Second Deed of Trust, she shall vacate the Property immediately and Lender may exercise all of its rights under the First Deed of Trust and/or the Second Deed of Trust, including its right to foreclose.  In the event Whiting does not obtain the funds to pay Lender the Settlement Payment in accordance with this paragraph of this Agreement, Whiting agrees that she will not contest (or further contest), delay, obstruct, or otherwise hinder the Lender or anyone acting on their behalf from foreclosing on the Property and waives any and all defenses to such foreclosure and/or eviction proceeding.

The district court issued an order on October 5, 2012, approving the Settlement Agreement and declaring that the Deeds of Trust are "valid and enforceable in accordance with [their] terms against the property," that the Deloatch Deed "is null and void," and that the Property is held in fee simple absolute by Whiting subject to the Deeds of Trust.

Wells Fargo filed its complaint for judicial foreclosure in the Superior Court on July 16, 2015, naming Mr. Deloatch and Ms. Whiting as defendants.  In turn,

Ms. Whiting filed a motion for declaratory judgment, asserting that the Settlement Agreement is "void and unenforceable." The gravamen of her argument was that the Deloatch Deed was not only null and void but also "void ab initio as if it never existed[,]" such that it is an "impossibility that [the] [D]eed[s] of [T]rust . . . predicated upon the nullified deed can exist." The motion contended that Wells Fargo therefore had no basis upon which to pursue the foreclosure action. Wells Fargo moved for summary judgment, asserting that there was nothing submitted to dispute that the loans to Mr. Deloatch were in default, that Ms. Whiting had "waived her right to contest the foreclosure[,]" and that she was estopped from arguing the invalidity of the Deeds of Trust.[5]

At the November 27, 2017, hearing on Wells Fargo's summary judgment motion, Stephen Metz, the counsel who represented Wells Fargo in the district court case, told the court that the parties' intent in settling was to treat the Deloatch Deed as null and void but not void ab initio. He further testified to his understanding that if the parties had litigated their dispute rather than settling and

---

[5] Ms. Whiting does not dispute that the proceeds from the loan provided by Wells Fargo's predecessor-in-interest paid off Whiting's Purchase Mortgage, Second Mortgage, and home equity line of credit and also provided her with a cash payout of approximately $20,000, for a total of $137,764.02. The parties stipulated in their Joint Pretrial Statement that Whiting "has not returned to [Wells Fargo] the loan proceeds of $137,764.02."

there had been a finding that the conveyance to Mr. Deloatch was procured through fraud but that Ms. Whiting had actually signed the deed (i.e., that her signature was not forged), the Deeds of Trust could have been enforceable by Wells Fargo as a bona fide lender without knowledge of the fraud.[6] Mr. Metz testified that the Deloatch Deed "wasn't null and void when [Ms. Whiting] signed the deed." Mr. Terrell, Ms. Whiting's then-counsel responded, "[N]o, of course not at that time. Subsequent."[7]

In granting summary judgment in favor of Wells Fargo on November 27, 2017, the Superior Court credited Mr. Metz's testimony, including his testimony to the effect that under the Agreement the parties intended to treat the Deloatch Deed as void (presumably, as of the date of the district court's order) but not void ab initio; found that the Settlement Agreement was "clear and unambiguous," valid, and enforceable; and noted that Ms. Whiting's testimony indicated that she understood its terms.

---

[6] During her testimony, Ms. Whiting acknowledged that she had executed an affidavit stating that she signed the Deloatch Deed.

[7] Wells Fargo's counsel also told the court that because the time limitation in the Settlement Agreement had expired and "everything now reverts back to the valid and enforceable deeds of trust," $340,000 is "the amount that it would take . . . in order for Ms. Whiting to redeem" her property.

In ruling on Wells Fargo's Motion for Entry of Final Judgment and Ms. Whiting's opposition and hearing request (which the court treated as a motion for relief under Super. Ct. Civ. R. 59(e) or 60(b)), the court ruled that Ms. Whiting had shown no clear error of law or extraordinary circumstances that would justify post-judgment relief in derogation of the finality of judgments. The court also reasoned that collateral estoppel applied because the validity of the Deeds of Trust was a litigated issue and was determined by a final judgment. As noted above, the court issued an Order of Judgment authorizing Wells Fargo to conduct a foreclosure sale.

On appeal, Ms. Whiting challenges the Superior Court's rulings on a number of grounds, which we address below.

## II.

"Our review of an order granting summary judgment is *de novo*, and we apply the same substantive standards which are to be applied by the trial court." *Allen v. Yates*, 870 A.2d 39, 44 (D.C. 2005). We may affirm the trial court's ruling on any basis supported by the record if the appellant will suffer no procedural unfairness. *Wilburn v. District of Columbia*, 957 A.2d 921, 924 (D.C. 2008).

## III.

As described above, the basis of the Superior Court's grant of summary judgment against Ms. Whiting and in favor of Wells Fargo was enforcement of the Settlement Agreement. Ms. Whiting argues that this was error because the Settlement Agreement was violative of public policy. Specifically, she contends that public policy disfavors an agreement that would strip a property owner of the notice rights established under District of Columbia laws relating to mortgage foreclosure. Ms. Whiting also appears to contend that the provisions of the Settlement Agreement by which she bound herself not to "contest (or further contest), delay, obstruct, or otherwise hinder the Lender or anyone acting on their behalf from foreclosing on the Property," and by which she "waive[d] any and all defenses to such foreclosure and/or eviction proceeding," are not actually binding because they deprive her of notice required by, and defenses arising under statute.

Wells Fargo argues that Ms. Whiting failed to preserve most of the arguments she now raises, including her argument that enforcement of the Settlement Agreement would violate public policy. That is generally correct, but, at least arguably, the issue she raised in the parties' Joint Pretrial Statement about "[w]hether notice of foreclosure was properly given" broached her contrary-to-

public-policy argument. Nevertheless, to the extent that Ms. Whiting's argument is that enforcement of the Settlement Agreement allowed Wells Fargo to circumvent District of Columbia foreclosure law, the argument is ultimately unavailing, for a number of reasons.

We note first that the Settlement Agreement does not contain a severability clause. To the extent that the no-contest and waiver-of-defenses clauses are invalid as contrary to public policy, the result may be that the entire Settlement Agreement is rendered invalid.[8] Yet, Ms. Whiting does not suggest that the provision establishing "that the Property is held in fee simple absolute by Whiting" is invalid, and we presume that she does not advocate that result. That being the case, she will not be heard to claim that the parties' agreement that the Deeds of Trust are valid and enforceable is unenforceable on the ground that the no-contest and waiver-of-defenses clauses are invalid.

Second, even if Ms. Whiting's "waive[r of] any and all defenses to . . . foreclosure" is unenforceable as inconsistent with the provisions of law that entitle

---

[8] *See generally Steiner v. Am. Friends of Lubavitch*, 177 A.3d 1246, 1256-59 (D.C. 2018) (discussing the varying approaches that courts take in deciding whether to enforce agreements containing covenants that are unenforceable on public policy grounds).

a property owner or borrower to avoid foreclosure if they have not been afforded advance notice of a (non-judicial) foreclosure sale,[9] the problem for Ms. Whiting's position is that the district court order incorporated the parties' agreement that the Deeds of Trust are valid and enforceable (without incorporating the no-contest and no-waiver provisions).  As discussed *infra*, that ruling establishes a *res judicata* bar to Ms. Whiting's contention that Wells Fargo had no right to foreclose upon a default by Mr. Deloatch.  As "res judicata[] [is itself] the embodiment of a public policy[,]"  *Crain v. Crain*, 209 A.2d 257, 260 (D.C. 1965) (internal quotation marks omitted), it weighs against Ms. Whiting's contrary-to-public-policy argument.

Further, "although a consent judgment, like any contract, may be held invalid if it violates a . . . regulatory statute," *Moore v. Jones*, 542 A.2d 1253, 1255 (D.C. 1988), Ms. Whiting has pointed to nothing in the district court's order that is violative of District of Columbia foreclosure law.  Under the provisions of law on which Ms. Whiting relies, the property owner and borrower must be afforded

---

[9]  Ms. Whiting cites D.C. Code §§ 42-815(b) and 42-815.02 (2020 Repl.) and former D.C. Code § 45-715(1981)).  As Wells Fargo argued in the trial court, these provisions apply only in the case of non-judicial foreclosures under power-of-sale provisions.  *See Rogers v. Advance Bank*, 111 A.3d 25, 29 (D.C. 2015).  Here, Wells Fargo pursued a judicial foreclosure (although, at least arguably, the Settlement Agreement left it free to pursue a non-judicial foreclosure).

notice *before a foreclosure sale is held*, including notice of the cure amount and other information designed to afford a cure opportunity. The district court order did nothing to excuse compliance with those requirements. In addition, the Superior Court's Order of Judgment essentially directed Wells Fargo to comply with the same requirements, including notice to Ms. Whiting as the Property owner of record, before conducting the foreclosure sale the court authorized. Whether Wells Fargo gave such notice in the wake of the Order of Judgment is not part of the record and could not have been a reason for the Superior Court to deny summary judgment to Wells Fargo on its claim that it was entitled to proceed toward foreclosure.

Also possibly subsumed in Ms. Whiting's contrary-to-public-policy argument are her complaints that enforcement of the Settlement Agreement denied her the right to the same communications (about the default) afforded to the alleged "defrauder" Mr. Deloatch; denied her early knowledge of the amount needed to cure his default; deprived her of an opportunity to "tak[e] measures to save her home by paying off any outstanding fraudulent loan amount in excess of her acknowledged pre-scam debt"; and validated Mr. Deloatch's fraud. Unfortunately for Ms. Whiting's position, this court will invalidate agreements as contrary to public policy "only in the clearest of cases, and with great caution."

*Moore v. Jones*, 542 A.2d 1253, 1255 (D.C. 1988) (citing *Landa v. Astin*, 193 F.2d 369, 371 (D.C. Cir. 1951)); *see also id.* (recognizing that courts will invalidate "a consent judgment, like any contract" if clearly contrary to public policy, but enforcing a consent judgment through which a tenant waived her right to redeem her tenancy). The law favors voluntary settlement of civil controversies in the absence of evidence of trickery or coercion, *id.* at 1255, 1256 n.3, and we generally treat a trial court's approval of a consent decree as signifying that the court has concluded that the parties' agreement is not unlawful, unreasonable, or inequitable, *id.* at 1254 n.1.

As *Moore* establishes, the fact that an agreement entails a party's consent not to contest a termination of her rights in her dwelling place if specified conditions are not met is not enough to render the agreement contrary to public policy. *See* 542 A.2d at 1255. In addition, the Superior Court found that Ms. Whiting, who was represented by counsel in the district court, understood the terms of the Settlement Agreement. She has neither come forward with evidence of trickery or coercion in her dealings with Wells Fargo, nor even alleged the same. She negotiated for a six-month period during which she could take steps to obtain financing to enable her to retain her rights in the Property, by paying a sum to Wells Fargo that (apparently) was considerably less than the value of the Property

(as suggested by the amount that Wells Fargo's predecessor-in-interest was willing to lend Mr. Deloatch with the Property as collateral). And although Ms. Whiting relies heavily on her claimed status as a defrauded borrower, the Settlement Agreement did no more than require Ms. Whiting — as a condition of retaining the Property, title to which had been restored to her under the Agreement — to repay the amount Wells Fargo's predecessor-in-interest had advanced to pay off her mortgage and provide her with a sizeable cash payout. We are satisfied that the terms of the Settlement Agreement that established a date certain by which Ms. Whiting was required to make the payment that would enable her to retain the Property without affording her all the rights of the borrower under the Deeds of Trust did not clearly violate public policy.[10] For all the foregoing reasons, we reject Ms. Whiting's argument that the Superior Court erred in enforcing the Agreement.

---

[10] Even though the Settlement Agreement provides that it is governed by Maryland law, we look to the public policy of this jurisdiction, under the principle that a jurisdiction "is not required to enforce a [foreign contract that is] obnoxious to its [own] public policy." *Griffin v. McCoach*, 313 U.S. 498, 507 (1941). In any event, it appears that the same result would follow under Maryland law. *See Bausch & Lomb, Inc. v. Utica Mut. Ins. Co.*, 625 A.2d 1021, 1037 (Md. 1993) (noting that Maryland courts are reluctant to strike down voluntary bargains on public policy grounds); *Maryland-Nat'l Capital Park & Planning Comm'n v. Washington Nat'l Arena*, 386 A.2d 1216, 1227-1229 (Md. 1978) (emphasizing the freedom of persons to make legally enforceable contracts).

Ms. Whiting next argues that the district court's order is "confusing," "conflicting," "ambiguous," and "vague." Her point seems to be that the district court's order did not resolve the purported inconsistency between the Settlement Agreement it approved and the Deeds of Trust it declared to be valid and enforceable, and therefore the order could not support summary judgment. One of the purported inconsistencies is that the Deeds of Trust give the borrower or his successor-in-interest the right to notices of default and to reinstatement of its rights in the Property, while the Settlement Agreement makes no mention of such "rights" for Ms. Whiting. According to Ms. Whiting, it is also unclear whether the Deeds of Trust collateralized a maximum of $121,270 rather than the amounts that Mr. Deloatch borrowed against the Property. Ms. Whiting's argument may also encompass her contention that the district court's order, though "unclear," should be read to treat the Deloatch Deed as void ab initio.

We review de novo the trial court's interpretation of a settlement agreement, *Dyer v. Bilaal*, 983 A.2d 349, 355 (D.C. 2009), and of a deed, *Sears v. Catholic Archdiocese of Wash.*, 5 A.3d 653, 660 (D.C. 2010). Pursuant to our adherence to an "'objective'" law of contracts, *DSP Venture Grp., Inc. v. Allen*, 830 A.2d 850,

852 (D.C. 2003), "we examine the document on its face, giving the language used its plain meaning." *Tillery v. District of Columbia Contract Appeals Bd.*, 912 A.2d 1169, 1176 (D.C. 2006); *see also Prince Constr. Co. v. District of Columbia Contract Appeals Bd.*, 892 A.2d 380, 385 (D.C. 2006) (noting that a consent judgment is an enforceable court order, but is also a contract that generally should be enforced as written).

Applying that standard of review, we see no contradiction between the Settlement Agreement's terms and the Deeds of Trust. Ms. Whiting's argument to the contrary is based on assumptions that the Settlement Agreement and the Deeds of Trust required "joint enforcement" and "collaborative application" and that she had rights under the Deeds of Trust which cannot be reconciled with her forfeiture of the Property if she did not pay Wells Fargo the $121,270 within six months as the Agreement contemplated. However, we see no basis for such assumptions. Ms. Whiting suggests that she was a successor-in-interest to the borrower (Mr. Deloatch), but nothing in the Agreement states that she would have that status (and Ms. Whiting acknowledges that Mr. Deloatch's obligations under the mortgages he took out on the Property were not assigned to her). We acknowledge that in opposing Ms. Whiting's motion for a declaratory judgment, Wells Fargo argued that "[i]t is as if [Ms. Whiting] executed the Deeds of Trust herself when she

signed the Settlement Agreement," but we decline to treat that statement as creating any lack of clarity in the district court's unambiguous order that the Deeds of Trust were enforceable "in accordance with [their] terms," which afford no rights to anyone other than the "Borrower" and lender (or their assigns). Ms. Whiting appears to have manufactured the interaction she posits between her opportunity to retain the Property pursuant to the Settlement Agreement and the Deeds of Trust, to which she is a stranger.

Nor do we think anything in the Settlement Agreement or the district court order can reasonably be read as declaring or reflecting an agreement or finding that the Deloatch Deed was void ab initio, or as showing that the district court "deemed" it to be so. Had the court's intent been to declare the Deloatch Deed null and void *nunc pro tunc* to the date it was executed, the court presumably would have invalidated the Deeds of Trust based on the Deloatch Deed as well as the Deloatch Deed itself.[11] Moreover, even if the underlying Settlement Agreement language was ambiguous on this point (which it is not), we would defer to the Superior Court's determination that Mr. Metz provided credible extrinsic evidence

---

[11] *See Smith v. Wells Fargo Bank*, 991 A.2d 20, 26 n.11 (D.C. 2010) (citing authority that a mortgage based on a deed that is void ab initio is likewise invalid).

of what the parties meant in agreeing that the Deloatch Deed was null and void.[12]

As noted above, Mr. Metz maintained that even if Ms. Whiting was defrauded, if she signed the Deloatch Deed herself, Wells Fargo would be able to enforce the Deeds of Trust as a bona fide holder of the note without notice of the fraud. (In addition, as described above, Ms. Whiting's counsel in the trial court appeared to agree that the Deloatch Deed was not void at the time it was executed.) As far as the record discloses, the facts relating to whether the Deloatch Deed was forged (and thus void ab initio) were not resolved, and the parties and court were free to treat that deed as voidable and as void as of the date of the district court order. Ms. Whiting has not persuaded us that this was error.[13]

## V.

---

[12] *See In re Bailey*, 883 A.2d 106, 118 (D.C. 2005) (explaining that if a contract "has more than one reasonable interpretation and therefore is ambiguous, then the court — after admitting probative extrinsic evidence — must determine what a reasonable person in the position of the parties would have thought the disputed language meant") (internal quotation marks omitted).

[13] *Cf. Brooke Grove Found., Inc. v. Bradford*, No. 8:17-cv-03364-PWG, 2018 U.S. Dist. LEXIS 206608, at *24 (D. Md. Dec. 4, 2018) (acknowledging that "in some cases, the law may treat the transferee [under a deed] as having held title during the period between the unlawful transfer and the entry of the court's judgment invalidating it").

Ms. Whiting further argues that there are genuine issues of material fact relating to defenses that she raised that made summary judgment improper. One such issue, she asserts, is the "factually intense" issue of whether Wells Fargo "waived its right to enforce the Settlement Agreement" because of its "inaction for multiple years or its selective application and enforcement of the Deloatch Deeds of [] Trust to Whiting."[14] Another factual issue, she contends, is how much Ms. Whiting owed to cure the default (i.e., Mr. Deloatch's default). Ms. Whiting also complains that Wells Fargo served a default notice for only one of the two Deeds of Trust, seeking an amount (approximately $146,492) that differs significantly from the $440,338.74 that the bank claimed in its complaint for judicial foreclosure. She argues that summary judgment in the face of these issues was a "violation of her due process rights, which effectively allow[ed] Wells Fargo to take Whiting's property" without the court having resolved the discrepancies.

---

[14] Ms. Whiting asserts that between December 2, 2012 and June 2, 2015, Wells Fargo failed to take any steps whatsoever to notify Whiting of any issue related to her interest in the Property pursuant to either the Settlement Agreement or the Deeds of Trust, and that there was no language in the Settlement Agreement that negated its duty to do so. Further, Ms. Whiting notes that Wells Fargo's limited communications between 2012 and 2015 regarding the subject loan were "directed to Deloatch" rather than Whiting.

As Wells Fargo notes, Ms. Whiting's defense that Wells Fargo waived its rights under the Settlement Agreement is a theory that she has advanced for the first time in this appeal. Her answer to the complaint for judicial foreclosure did not preserve a defense of waiver, which, under Super. Ct. Civ. R. 8(c), had to be affirmatively stated to be preserved. She likewise failed to identify waiver as an issue in the parties' Joint Pretrial Statement. Thus, the Superior Court did not have before it a waiver claim that precluded summary judgment.

The other factual issues Ms. Whiting identifies also do not persuade us that the grant of summary judgment should be disturbed, because the issues are not material. Under the Settlement Agreement, the only amount that was relevant to Ms. Whiting was the payment specified in the Agreement, which, undisputedly, Ms. Whiting failed to pay within the allotted time period. The Settlement Agreement did not obligate Wells Fargo to give notice to Ms. Whiting that the six-month period had expired or to remind her of the payment due to retain her rights to the Property. Whether the bank gave notice to Mr. Deloatch under one or both Deeds of Trust is of no moment.

**VI.**

Finally, Ms. Whiting argues that the Superior Court erred in relying on collateral estoppel to deny her relief. Our review of application of the doctrines of collateral estoppel and res judicata is de novo. *Elwell v. Elwell*, 947 A.2d 1136, 1139 (D.C. 2008); *see also M.D. v. R.W.*, 194 A.3d 374, 379 (D.C. 2018) (explaining that although we ordinarily review the denial of a Super. Ct. Civ. R. 59(e) motion for abuse of discretion, our review is de novo when the trial court considers a legal argument).

The doctrine of collateral estoppel, also known as issue preclusion, "renders conclusive in the same or a subsequent action determination of an issue of fact or law when (1) the issue [was] actually litigated and (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; (4) under circumstances where the determination was essential to the judgment, and not merely dictum." *Modiri v. 1342 Rest. Grp., Inc.*, 904 A.2d 391, 394 (D.C. 2006) (internal quotation marks omitted). The Superior Court was correct that the validity and enforceability of the Deeds of Trust were determined by a valid, final judgment on the merits by the district court order.[15]

---

[15] *See Molovinsky v. Monterey Coop.*, 689 A.2d 531, 533 n.1 (D.C. 1997) (explaining that dismissal with prejudice based on a settlement agreement operates as an adjudication on the merits and should not be treated any differently than a judgment).

However, it is unclear to what extent the underlying issues were actually litigated, and we therefore are persuaded by Ms. Whiting's argument that the doctrine of collateral estoppel was inapposite.[16] As the Supreme Court has pointed out, "settlement[] [agreements] ordinarily occasion no *issue preclusion*[.]" *Arizona v. California*, 530 U.S. 392, 414 (2000).

What settlement agreements such as the one here and consent judgments *do* occasion, however, is claim preclusion or res judicata. *See id.* ("'[C]onsent judgments ordinarily support claim preclusion but not issue preclusion[]'"; "'[i]n most circumstances, it is recognized that consent agreements ordinarily are intended to preclude any further litigation on the claim presented but are not intended to preclude further litigation on any of the issues presented.'"). We conclude that res judicata did apply to bar Ms. Whiting's claim that the Deeds of Trust were not valid and enforceable. "Under the doctrine of claim preclusion or

---

[16] We regard the question as a close one, though. Courts have not always separately analyzed the "actually litigated" prong. *See Ashe v. Swenson*, 397 U.S. 436, 443 (1970) (explaining that collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit"). Also, when a "settlement agreement or consent judgment is relied upon, [the question presented is] whether by their agreement the parties not only intended to terminate the litigation of claims but also intended to determine finally the issues . . . presented." *United States v. Spicer*, 155 B.R. 795, 804 (Bankr. D.D.C. 1993).

*res judicata*, when a valid final judgment has been entered on the merits, the parties or those in privity with them are barred, in a subsequent proceeding, from relitigating the same claim or any claim that might have been raised in the first proceeding." *Washington Med. Ctr., Inc. v. Holle*, 573 A.2d 1269, 1280-81 (D.C. 1990). "The doctrine operates to preclude assertion of 'all rights of [one party] to remedies against the [other party] with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.'" *Id.* at 1281. "It does not matter that the earlier and later proceedings differ in nature: 'as long as the parties are the same, and the essence of the claim and evidence necessary to establish it are the same, *res judicata* applies.'" *Id.*

Here, Ms. Whiting agreed with Wells Fargo that her ownership of the Property was "subject . . . to the valid and enforceable liens" of the Deeds of Trust, and the district court incorporated the parties' stipulation in its order, declaring the Deeds of Trust to be valid and enforceable in accordance with their terms. Accordingly, Ms. Whiting's claim that the Deeds of Trust are not valid and enforceable is barred by res judicata. We may "affirm the judgment on a different ground than that relied upon by the court below if the appellant will suffer no procedural unfairness – that is, if appellant had notice of the ground upon which affirmance is proposed, as well as an opportunity to make an appropriate factual

and legal presentation with respect thereto[.]" *Wilburn*, 957 A.2d at 924 (brackets and internal quotation marks omitted). There is no procedural unfairness in upholding the Superior Court's Order on the basis of *res judicata* because, in opposing Ms. Whiting's motion for a declaratory judgment, Wells Fargo argued that either collateral estoppel or res judicata applied, Ms. Whiting had an opportunity to respond in her reply brief in support of her declaratory judgment motion, and in the Joint Pretrial Statement the parties identified as an issue whether res judicata and collateral estoppel applied to the dispute about the validity of the Deeds of Trust.

For all the foregoing reasons, the judgment of the Superior Court is

*Affirmed.*